UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

JASON NISSEN,

Defendant.

17-CR-477 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

In an order issued September 17, 2018, the Court directed the Government to answer certain factual questions prompted by a victim-impact letter the Government had furnished to the Court (Dkt. No. 48). The Court further invited the defense, following the filing of the Government's letter, to submit a response. *Id.* In response, the Court yesterday received, in sequence, a letter from the defense (Dkt. No. 49), and a letter from the Government (Dkt. No. 50). The Court thanks counsel for these helpful and promptly submitted letters.

These letters, and the presentence report, reveal a lack of consensus and/or resolution as to a potentially consequential factual issue involving sentencing: whether the defendant and/or his family received any personal financial benefit from any part of the more than $71 million in funds the defendant fraudulently obtained. In brief:

1. The factual component of the presentence report is all but silent on this point. In language tracking a clause in the Information, it states summarily that defendant Jason Nissen "used the lenders' money to principally repay other lenders and enrich himself." PSR ¶ 1 (quoting Indictment); *id.* ¶ 9 (stating that "Nissen largely used the victims' funds to repay other victims and to enrich himself; Nissen contends that he

1

used a 'considerable amount of money' for legitimate business purposes and his motivation was to 'repay investors and keep the company afloat"). The PSR does not, however, factually develop or quantify the statement that Nissen used these funds "to enrich himself." Nor, to the extent that it later references wire transfers to "Nissen's personal bank account" of $1,500,050 (*id.* ¶ 26) and later $2 million (*id.* ¶ 29), does it resolve the ultimate use of these funds.[1]

2. The defense appears to represent that the answer is no – that Nissen did not use any of the fraudulently obtained funds for personal purposes. *See* Dkt. 49; *see also* Dkt. 47 (stating that the Nissens' home was independently funded and stating that the $700 monthly lease payment on Haydee Nissen's SUV was a sum "she could well afford on her income").

3. The Government's letter reports information which it appears to have received in the preceding day from counsel for the bankruptcy trustee, via an investigation firm that the trustee hired. *See* Dkt. 50. From this source, the Government represents that, as to cash and credit card withdrawals, (a) some $768,000 was disbursed to a jewelry store on West 47th Street, including $300,000 during 2015-2017; (b) some $3,815,145 was disbursed to the defendant's wife, including $955,310 during 2015-2017; (c) some $34,543,409 was disbursed to the defendant, including $9,274,027 during 2015-2017; and (d) some $1,369,675 was apparently disbursed to various casinos, including $326,837 during 2015-2017. The Government represents that it has been told by defense counsel that it is not uncommon in the ticket resale business for a

---

[1] The PSR's sentencing recommendation restates the allegation that "Nissen utilized the funds obtained from these investors for his own personal use," PSR, page 28, without elaboration, and states that Nissen's lifestyle was "way beyond his means." *Id.*

significant amount of business to have been done in cash. However, the Government expresses doubt that all of the above disbursements (including to the defendant's wife and to the jewelry store) were "used exclusively to purchase and resell tickets." *Id.* The Government states that it will be prepared to address further questions at Friday's sentencing and "is also prepared to conduct further investigation should the Court so direct." *Id.*

Under these circumstances, the extent (if any) to which the defendant and/or his family personally benefitted from the defendant's more than $71 million fraud presents a significant unresolved question that prevents the Court from responsibly imposing sentence in this case. The answer to this issue has the potential significantly to affect the sentence, including insofar as it bears on the defendant's motivation for defrauding his company's lenders and on his claim to have acted exclusively for the purpose of saving his company. It is further unclear whether the answers to these questions (e.g., the ultimate disposition of the funds disbursed to the jewelry store, the defendant's wife, the defendant, and the casinos) are accessible or whether they will require additional investigation. It is unclear whether the Government has conducted any independent investigation into the disposition of the fraudulently obtained funds, or whether its sole source as to that is information it has obtained from the bankruptcy trustee's investigations vendor.

Given this significant factual unknown, the Court accordingly will not impose sentence at the hearing scheduled for September 22, 2018. The Court instead will use that hearing for two purposes.

First, the Court will take up preliminary matters to a sentencing proceeding. It will assure that there is a complete record of all submissions made to date in connection with the

sentencing; it will determine whether and to what extent there are factual objections to the PSR; and it will take up the calculation of the advisory Guidelines range.  At Friday's hearing, however, the Court will not solicit counsel's views as to the sentence or hear from the defendant or any victim.  Such matters will be taken up at a later sentencing hearing, to be scheduled.

Second, the Court will hear from counsel as to a reliable method for answering the open factual question above as to the extent of personal benefit.  The Court directs Government and defense counsel to confer in advance of the hearing, with an eye towards developing a mutually agreeable method for reliably determining, as much as realistically possible, the final disposition of the fraudulently obtained funds.  It is the Court's hope that there will not be a need for a *Fatico* hearing to resolve disputes as to that matter.  If, however, factual disputes remain after a sufficiently rigorous inquiry into this issue, such a hearing may prove necessary.  The Court expects counsel to be prepared to address the investigative work undertaken to date as to these matters, and to assure ready access to information about such work, the Court asks the Government to be accompanied at the hearing by a case agent knowledgeable as to the Government's investigation.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: September 19, 2018
       New York, New York