

DAVIDOFF HUTCHER & CITRON LLP
ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

GARDEN CITY
ATTORNEYS AT LAW
200 GARDEN CITY PLAZA
GARDEN CITY, NY 11530
(516) 248-6400

ALBANY
GOVERNMENT RELATIONS
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
GOVERNMENT RELATIONS
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

May 15, 2020

*Via Email and ECF*
Honorable Paul A. Engelmayer
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   United States v. Jason Nissen, Docket No. 17 Cr. 477 (PAE)
      <u>Compassionate Release Application</u>

Dear Judge Engelmayer:

The undersigned counsel represent Jason Nissen in the above-captioned matter. We hope this letter finds Your Honor and everyone connected with chambers safe and healthy. We write to respectfully request Your Honor's consideration of Mr. Nissen's compassionate release application.

Specifically, we ask that you modify Mr. Nissen's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) so that he may serve the balance of his sentence in supervised home confinement. The COVID-19 pandemic has caused extraordinary and compelling reasons justifying his release. We believe this request should be granted for two equally important reasons, either of which justifies modification of the sentence: (1) Mr. Nissen's medical conditions put him at serious risk should he contract COVID-19 and, given the conditions at FCI Otisville, there is a strong likelihood he will contract it; and (2) due to a combination of factors related to the pandemic and Mr. Nissen's absence from home, two of Mr. Nissen's three young daughters are experiencing severe and debilitating medical and emotional problems.

Mr. Nissen is currently incarcerated at the minimum-security camp at FCI Otisville, Two Mile Drive, Otisville, NY. According to the BOP's website, Mr. Nissen's expected release date is October 7, 2021, though with possible home confinement, his release date could be as early as April of 2021. As of the date of this request, Mr. Nissen has been incarcerated since November 7, 2019.

DocuSign Envelope ID: 934499B0-3329-46F7-A059-6EE151416AB0

Since the COVID-19 crisis began, entire communities have sheltered in place to protect more vulnerable populations. The prison community at FCI Otisville represents an environment that cannot provide sufficient shelter for prisoners and consequently, leaves its medically compromised occupants like Mr. Nissen vulnerable. Given the crowded nature of our Nation's correctional facilities, once the virus makes its way into a facility it is almost guaranteed that it will spread.[1] Indeed, Dr. Linley, the BOP's designated medical professional at FCI Otisville, told its 115 inmates (crowded into a room with only 72 seats) that it was likely everyone at the facility would contract the virus if even one guard or inmate contracted it. As he conveyed this message, Dr. Linley himself had donned full PPE protective gear. And, of course, the COVID-19 virus found its way to FCI Otisville, to the tune of at least 17 known inmates and 14 guards and staff. As of May 5, 2020, there were 45 known cases of COVID-19 at Otisville.[2] Otisville has left its inmates with inadequate safeguards against COVID-19. In light of the COVID-19 pandemic and the outbreak at FCI Otisville, Mr. Nissen is in grave danger.

Mr. Nissen suffers from a serious cardiac arrhythmia condition, which his cardiologist, Dr. Richard A. Shlofmitz, Chairman of Cardiology of St. Francis Hospital, believes leaves Mr. Nissen especially vulnerable to serious illness or even death. (See *Exhibit A*). A release to home confinement will most assuredly reduce Mr. Nissen's chances of contracting the deadly virus. In addition, a home release would allow Mr. Nissen to care for his young children, all of whom are all struggling with his absence and the current pandemic circumstances. His daughters' struggles are particularly acute given that BOP informed Mr. Nissen on or about April 17, 2020 that he would be furloughed to his home, and the girls expected he would be home. When the BOP and FCI Otisville reversed course, Mr. Nissen's daughters were devastated.

Your Honor recently granted compassionate release under similar circumstances, *see United States v. Daniel Hernandez*, No. 1:18 CR. 834-04 (PAE), 2020 WL 1684062 (S.D.N.Y. Apr. 2, 2020), and a District Court in Florida granted compassionate release to an inmate suffering from a cardiac condition similar to the one Mr. Nissen has. *United States v. Andre Williams,* No.

---

[1] *See* Timothy Williams, *et al.*, *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times, Mar. 30, 2020, http://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, No. 1:18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (citing U.S. Ctrs. For Disease Control & Prevention, *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, at 2 (Mar. 23, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf (highlighting danger faced by those in jails and prisons)).

[2] *See* Courtney Gross, *Legal Aid Sues New York State to Release Prisoners Vulnerable to Coronavirus*, Spectrum News, May 7, 2020, https://spectrumlocalnews.com/nys/central-ny/news/2020/05/08/exclusive--legal-aid-sues-for-new-york-state-to-release-prisoners-vulnerable-to-coronavirus-.

3:04-cr-95-MCR, Dkt. 91 (N.D. Fla. Apr. 1, 2020). Consistent with this rationale, the Honorable Lorna G. Schofield observed in *United States v. Damian Campanga*, No. 1:16 Cr. 78-01, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020), a defendant with a "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [d]efendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self care within the environment of the RCC." *Id*. at *3 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)). The same health-related justification for compassionate release applies here.

Mr. Nissen is an even more compelling candidate for release than the inmates in the above-referenced cases, given the condition of his young daughters. Two of his three daughters (one is an infant) are suffering from their father's absence due to their own debilitating personal circumstances. One has ever-regressing autism and one has depression, and if their father were to succumb to COVID-19, they would face even more challenges. If released, Mr. Nissen would become the primary care-giver of the children, providing them additional structure, nurturing and support. This is particularly critical in that his daughters' mothers work full-time jobs. And, Mr. Nissen is no threat to the public or of recidivism. This is all consistent with your Honor's astute observation at the sentencing hearing: "the public has little to fear from you, Mr. Nissen, if you are at large. Until this crime, you were very much a positive contributor to your various communities." (Nissen Sentence Tr. 63:1-3).

Mr. Nissen has satisfied the administrative prerequisites for the Court to have jurisdiction under Section 3582(c)(1)(A) as he submitted a compassionate release request on March 31, 2020 to Otisville's warden, who did not take action on it.

In the end, courts around the country, including this one, have granted compassionate release requests related to the COVID-19 crisis on less pressing grounds. In light of the heightened medical risk presented to Mr. Nissen by the COVID-19 pandemic and the need to care for his children, there are extraordinary and compelling reasons to modify Mr. Nissen's sentence in the manner requested. As a result, we respectfully request that Mr. Nissen be released from custody and required to serve the balance of his sentence in home confinement, on conditions to be specified by the Court.

## I. BACKGROUND

Mr. Nissen was charged with a nonviolent crime (wire fraud) in violation of U.S.C. § 1343, quickly pled guilty and, on September 6, 2019, he was sentenced to 27 months in the Otisville Correctional Facility. Mr. Nissen began serving his sentence on November 7, 2019.

During your Honor's sentencing of Mr. Nissen on September 6, 2019, you observed "there is nothing in [Mr. Nissen's] history or the record of this case that would lead a person to think that [Mr. Nissen] will recidivate. There is nothing that suggests that you are prone generally to taking advantage of others. Everything I have read about you is to the contrary." (Nissen Sentence Tr. 61:20-24).

Hon. Paul A. Engelmayer
May 15, 2020
Page 4 of 14

### A. Mr. Nissen's Health Conditions and Associated Risks

Mr. Nissen suffers from a pre-existing medical condition, cardiac arrhythmia. Mr. Nissen's cardiologist, Dr. Richard A. Shlofmitz, Chairman of Cardiology at St. Francis Hospital, concluded that Mr. Nissen has an increased risk of COVID-19 complications given his history of cardiac arrhythmia. *See Exhibit A*. In addition to Mr. Nissen's existing heart condition, he also has battled with respiratory issues most of his adult life and been under the care of a pulmonologist for asthma and related breathing issues. He has a chronic cough for which he has had multiple chest x-rays. He previously has been prescribed an inhaler for his breathing issues and is now taking pantoprazole for acid reflux and associated gastrointestinal issues.

As this Court is well aware, patients with pre-existing health conditions such as heart conditions, pulmonary disease, obesity, and high blood pressure (hypertension) are at higher risk for a more severe infection if they contract COVID-19. These medical conditions decrease the natural reserves that the body has to fight this infection.[3] The CDC recommends higher-risk individuals take the following steps in order to avoid contracting the virus: 1) stay home if possible; 2) wash their hands often; 3) take everyday precautions to keep space from others (stay 6 feet away, which is about two arm lengths); 4) keep away from people who are sick; 5) stock up on supplies; and 6) clean and disinfect frequently touched services.[4] Obviously, it is impossible to follow any of these protocols while in prison. There is no place in prison to self-isolate and, even if the BOP attempts to enact some changes (something that has not happened at FCI Otisville), they will not come close to meeting the CDC's guidelines.

### B. The Conditions at FCI Otisville and the Furlough "Bait and Switch"

According to the BOP's own website, 17 inmates and 14 staff at FCI Otisville have "recovered" from the COVID-19 virus.[5] Incongruently, the same source somehow claims zero inmates and only one staff member have been infected.[6] In contrast, a story in the New York Times on April 17, 2020 reported that 14 inmates and seven staff members at Otisville have tested positive for coronavirus.[7] Then, another New York news outlet reported that, as of May 5, 2020,

---

[3] *See* https://www.uchicagomedicine.org/forefront/coronavirus-disease-covid-19/covid-19-information-for-patients-with-heart-conditions.

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html.

[5] *See* https://www.bop.gov/coronavirus/

[6] *Id.*

[7] *See* Benjamin Weiser & William K. Rashbaum, *Michael Cohen Is Among Prisoners to Be Released Because of Virus*, N.Y. Times, April 17, 2020,

Hon. Paul A. Engelmayer
May 15, 2020
Page 5 of 14

45 Otisville inmates had contracted COVID-19.[8]  Whatever the real numbers, the COVID-19 outbreak at FCI Otisville is very real and widespread.

Shortly after the New York Times published its April 17, 2020 story, the inmates at FCI Otisville's minimum-security camp were informed that they were being "furloughed" for a minimum of thirty days due to safety concerns with the COVID-19 situation.  The prison instructed inmates they would be remanded to home confinement for their safety and the safety of prison personnel.  In order to be released on the furlough, each inmate was required to serve a fourteen-day quarantine.  Inmates were given written furlough instructions and required to sign actual release paperwork (copies of which they were not provided).  In fact, Camp Administrator Scheffler said directly to all of them, "Go call your families."  To facilitate return to their homes, inmates such as Mr. Nissen informed family members of their pending furlough, disposed of their belongings acquired while at FCI Otisville, and did everything that an inmate would do in preparation for release.

Mr. Nissen and the rest of the inmates were then placed into smaller cells in the medium security prison on "lockdown" status.  Seventy-nine men in total (two men in each cell) lived in cells measuring approximately 7.5 feet by 12 feet.  These terrible conditions were exacerbated by the extreme limits on any time quarantined inmates were permitted outside of the cell.  Any semblance of social distancing was impossible.  All of this was somewhat tolerable for Mr. Nissen because he initially believed it was a prerequisite to release to home confinement and reunion with his family.

After 19 days in quarantine, Mr. Nissen was advised that he would not be transitioned to home confinement.  He was told simply that "things have changed" and he and the other inmates would not be released.  Instead, Mr. Nissen was returned to the minimum-security camp.  Mr. Nissen and his family were devastated by this "bait and switch."

The conditions at FCI Otisville have not improved.  On April 13, 2020, just before Mr. Nissen entered a two-week quarantine, the prison provided Mr. Nissen with a cloth mask intended for temporary use. Two days later, the mask broke. FCI Otisville refused to give Mr. Nissen a new mask and, consequently, Mr. Nissen attempted to fix the mask with duct tape. Mr. Nissen, who is medically vulnerable due to his heart condition, was forced to use a duct-taped mask for nearly a month in a prison containing 45 confirmed cases of COVID-19 infection.  Even with the time availed the prison to take additional safety precautions during quarantine, conditions in the camp have worsened.  For example, Mr. Nissen reports the following:

---

https://www.nytimes.com/2020/04/17/nyregion/michael-cohen-release-prison-otisville-virus.html.

[8] *See supra* note 2.

DocuSign Envelope ID: 934499B0-3329-46F7-A059-6EE151416AB0
Case 1:17-cr-00477-PAE   Document 102   Filed 05/15/20   Page 6 of 14

DAVIDOFF HUTCHER & CITRON LLP

Hon. Paul A. Engelmayer
May 15, 2020
Page 6 of 14

1. Lack of compliance with CDC Guidelines: soap provided some of time, paper towels provided sporadically, tissues never provided, hand sanitizer never provided, and PPE for orderlies never provided.
2. The face masks given to inmates are cotton paper masks meant to be worn 3-4 hours, which are distributed once a week. If an inmate's mask breaks, rips or is damaged, it is not replaced.
3. In fact, Mr. Nissen was forced to use the same mask for two weeks straight causing the mask to turn brown while it was held together with duct tape.
4. Quarters for inmates who leave camp with virus symptoms are not sanitized, and officers remove belongings with only gloves and a mask.
5. Inmates continue to live in quarters with other inmates, sleeping less than four (4) feet apart.
6. Officers work double shifts as other officers call out sick.

These are just a sampling of the conditions to which Mr. Nissen has been subjected while incarcerated at FCI Otisville. Mr. Nissen lives in constant fear of contracting the virus and worries that he may never have a chance to see or be with his loved ones again.

### C. Mr. Nissen's Young Daughters Uniquely Require the Presence of Two Parents

As the Court knows from the sentencing process, Mr. Nissen is the father of three daughters. Elisabeth and Juliette are his daughters with his current wife, Haydee. Ava is Mr. Nissen's daughter from his first marriage to Deana. Ava is 12, Elisabeth is three and Juliette less than a year old. Mr. Nissen's incarceration has caused them all significant emotional distress and has interfered with their respective development. The unique challenges presented by COVID-19, including the older girls' concern over their father's health and associated childcare complications, have exacerbated their developmental problems. These problems became even more acute when the promise of their father's furlough was dashed by the BOP's course reversal. The emotional devastation to the girls occasioned by this cruel bait-and-switch cannot be overstated.

Elisabeth was first diagnosed with autism at an early age. According to her primary pediatrician, Dr. Arnold Chusid, Elisabeth's regression began when she was just shy of two years old. *See Exhibit B*. Dr. Chusid stated that because autism can affect every aspect of a child's life, and children with autism respond better to routine and proper engagement, an autistic child needs not only special education and related services, but the full support of family, friends, physicians, and both parents. *See id*. Importantly, Dr. Chusid notes that recent, major changes in Elisabeth's home dynamic (*i.e.* her father's sudden absence) have contributed to her regression. *See id*.

Mr. Nissen's incarceration has complicated Elisabeth's treatment and has led to an even more severe regression, something noted by the service providers at the East Williston School District. The District added occupational therapy in December of 2019 to Elisabeth's treatment. Unfortunately, occupational therapy is only conducted at a clinic during normal business hours. Since Mrs. Nissen has to work to support the family financially, she leaves the house at 7:45 am and does not return until 7:00 pm at night. Mrs. Nissen also regularly travels to China and Ohio

DocuSign Envelope ID: 934499B0-3329-46F7-A059-6EE151416AB0

for work, with such trips lasting between three and seven days at a time. Since Mrs. Nissen works and cannot take Elisabeth to her much-needed occupational therapy, Elisabeth has never received the therapy.

For her part, Mr. Nissen's older daughter, Ava, who is twelve years old, has severely struggled in school since separation from her father. Ava previously was an exemplary student, but she is now missing classes and even failing them. *See Exhibits C & D*. Her principal and teachers have expressed major concerns about her rapid decline in performance and overall well-being. *See id.* The school psychologist has contacted Ava's mother, Deana Nissen, to advise her of Ava's struggles and severe deterioration.

Ava's situation is complicated by the fact that her mother is an essential worker at Spectrum Suds, working long hours running a non-profit business on Long Island that has pivoted to laundering clothes and uniforms for front line workers (police, fire fighters, and medical personnel) due to the pandemic. As a result, Ava is often home, alone, for many hours at a time.

The diminishing mental and physical health of both girls at their young ages poses severe risks to their continued development. They need the presence of their loving father while quarantined at home, rather than his untimely demise at the hands of COVID-19.

## II. ARGUMENT

### A. The Court has Jurisdiction Pursuant to 18 U.S.C. § 3582(c)(1)(A) as Mr. Nissen Properly Pursued His Administrative Remedies

Mr. Nissen exhausted all required administrative remedies and, as a result, this Court has jurisdiction to entertain Mr. Nissen's motion and to fashion appropriate relief.

Under 18 U.S.C. § 3582(c)(1)(A), the Court may authorize a modification of a term of imprisonment "upon motion of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There is no requirement that an administrative appeal be disposed of before jurisdiction lies in the district court. *United States v. Mark Resnick*, No. 1:14-cr-810, 2020 U.S. Dist. LEXIS 59091, at *15-16 (S.D.N.Y. Apr. 2, 2020) (Section 3582 jurisdiction exists if 30 days elapse with no BOP response to compassionate release request submitted to counselor); *United States v. Wilson Perez*, No. 1:17-cr-513, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) (finding 30-day exhaustion rule futile where there is already a COVID-19 outbreak at facility and only several weeks remaining on sentence); *United States v. Teresa Ann Gonzalez*, No. 2:18-cr-232, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020) (same); *United States v. Conrado Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("[u]nder the newly amended § 3582(c)(1)(A) [defendant] has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response."); *United States v. Arturo Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (holding defendant's "petition . . . meets the requirement

DocuSign Envelope ID: 934499B0-3329-46F7-A059-6EE151416AB0

Case 1:17-cr-00477-PAE    Document 102    Filed 05/15/20    Page 8 of 14

DAVIDOFF HUTCHER & CITRON LLP

Hon. Paul A. Engelmayer
May 15, 2020
Page 8 of 14

of a lapse of 30 days from the receipt by the warden of the defendant's facility . . . The Court therefore has the authority to address the motion of the defendant").

Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Perez*, 17 CR. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020). In evaluating a reduction, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id*.

Here, Mr. Nissen satisfied his administrative remedy requirement by submitting an administrative request to the Otisville Warden, James Petrucci, requesting that the BOP file a motion for compassionate release on March 31, 2020. *See Exhibit E*. More than 30 days have passed, and Warden Petrucci has not submitted the requested motion or otherwise replied to Mr. Nissen's request.

Thus, jurisdiction exists because Mr. Nissen properly submitted a compassionate relief request to the Otisville warden on March 31, 2020, in response to which the BOP never moved for a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A); *id*. (d)(2)(B)(ii), (iii); 28 C.F.R. § 571.61(b); BOP Program Statement 5050.50, § 2(b).

### B. Mr. Nissen Presents Extraordinary and Compelling Reasons for Release

There are extraordinary and compelling reasons justifying Mr. Nissen's release to home confinement. First, Mr. Nissen has a serious and debilitating cardiac condition, which, combined with COVID-19 and the poor conditions of FCI Otisville, could be a death sentence. This medical condition, alone, justifies release. *See, e.g.*, *Williams*, No. 3:04-cr-95-MCR, Dkt. 91 (holding that an inmate with a cardiac condition should be released due to high risk of COVID-19 medical complications). Second, two of Mr. Nissen's daughters have medical or psychological issues, conditions which are exacerbated by their father's absence.

#### i. COVID-19 is spreading in federal prisons and causing deaths.

Prisons present a heightened and unique contagion risk for COVID-19, both to inmates and to society at large.[9] This is due to number of factors, most notably prison population density

---

[9] The COVID-19 respiratory disease has exponentially spread to over 114 countries, infecting over 4,006,257 people around the globe, with over 278,982 deaths. *See* World Health Organization, Coronavirus Disease Situation Report 112, *available at* https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200511-covid-19-sitrep-112.pdf?sfvrsn=813f2669_2. In the Americas, the WHO statistics show that over 1,702,451 people have been infected and 101,874 deaths (over 36% of all deaths worldwide). *See id*.

DocuSign Envelope ID: 934499B0-3329-46F7-A059-6EE151416AB0

DAVIDOFF HUTCHER & CITRON LLP

Hon. Paul A. Engelmayer
May 15, 2020
Page 9 of 14

and inability to social-distance while incarcerated. The use of shared communal areas for eating and bathing contributes to the outsized risk. So solid is this expert consensus that strange bedfellows ranging from the authorities in Tehran,[10] to Colombian and Israeli prison officials,[11] to over 400 former U.S. Attorneys, Assistant U.S. Attorneys and federal judges,[12] to the President,[13] to 14 bipartisan Senators,[14] to the U.S. Attorney General[15] (who has issued two prisoner release directives) have all called for sweeping categories of prisoners to be released from incarceration. Already, cities and counties like Los Angeles, New York, and Baltimore have released thousands of prisoners.

In a sworn declaration widely cited in recent compassionate release cases, Dr. Jamie Meyer, an infectious disease specialist and Assistant Professor at Yale School of Medicine, explained "[t]he risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected." *Declaration of Dr. Jamie Meyer*, dated Mar. 22, 2020, *Faour Abdallah Fraihat, et. al., v. U.S. Immigration and Customs Enforcement, et. al.,* No. 19-cv-01546-JBG-SHK, Dkt.

---

[10] Parisa Hafezi, *Iran Temporarily Frees 85,000 Prisoners from Jail Including Political Prisoners*, Reuters, Mar. 17, 2020, https://www.reuters.com/article/us-health-coronavirus-iran-prisoners/iran-temporarily-frees-85000-from-jail-including-political-prisoners-idUSKBN21410M.

[11] Chris Kraul, *Colombia May Release Some Prisoners After Deadly Riots Over Coronavirus*, L.A. Times, Mar. 23, 2020, https://www.latimes.com/world-nation/story/2020-03-23/in-colombia-critics-cite-overcrowding-in-coronavirus-linked-prison-riot.

[12] Letter to the White House Regarding Mass Commutation Signed by Over 400 Former U.S. Attorneys, Assistants, Judges (Mar. 27, 2020), *available at* https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf.

[13] Ellen Cranley, Trump is considering releasing elderly, 'totally nonviolent' offenders from federal prisons amid coronavirus outbreak, Mar. 22, 2020, *available at* https://www.businessinsider.com/trump-consider-coronavirus-executive-order-federal-prisons2020-3.

[14] Letter from 14 Senators to Attorney General Barr and Director Carvajal, dated March 23, 2020, *available at* https://www.durbin.senate.gov/imo/media/doc/Letter.%20to%20DOJ%20and%20BOP%20on%20COVID-19%20and%20FSA%20provisions%20-%20final%20bipartisan%20text%20with%20signature%20blocks.pdf.

[15] Memorandum from Attorney General Barr to the Director of Bureau Prisons, dated March 26, 2020, *available at* https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.

DocuSign Envelope ID: 934499B0-3329-46F7-A059-6EE151416AB0
Case 1:17-cr-00477-PAE   Document 102   Filed 05/15/20   Page 10 of 14

DAVIDOFF HUTCHER & CITRON LLP

Hon. Paul A. Engelmayer
May 15, 2020
Page 10 of 14

81-8 (C.D. Cal. 2020). Dr. Meyer describes the inadequacies of current preparedness plans by detention facilities and the difficulty of separating infected or symptomatic inmates from others. *Id.*

As of this submission, 3,379 federal inmates have officially tested positive for the virus, as have 250 staff.[16] In addition, according to the Bureau of Prisons, 45 inmates have died as a result of contracting the virus.[17] Due to limited testing, among other factors, the infection numbers are almost surely underreported. Otisville FCI, where Mr. Nissen is incarcerated, is one of the few facilities experiencing positive virus testing for both inmates and staff.[18] At least six federal prisoners have died of the virus.[19]

> **ii.     Courts across the Country have granted compassionate releases due to COVID-19**

Courts across the country have recognized that the risk of COVID-19 infection presents extraordinary and compelling circumstances sufficient to grant compassionate release. To this end, many in this judicial district and elsewhere have granted sentence reductions under Section 3582. *See, e.g.*, *Resnick*, 2020 U.S. Dist. LEXIS 59091, at *19-20 (Judge McMahon reducing six-year sentence to time served for 65-year-old man with diabetes); *Perez*, 2020 WL 1546422 (Judge Torres reducing sentence to time served for man at MDC with medical complications); *Campanga*, 2020 WL 1489829, at *3 (granting motion for Covid-19 compassionate release, substituting outstanding term of incarceration with home confinement for man with compromised immune system); *United States v. Jeremy Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 U.S. Dist. LEXIS 58718, at *2 (E.D. Pa. Apr. 1, 2020) (reducing 20-year sentence to time served for man with diabetes and high blood-pressure); *United States v. Anton Jepsen*, No. 3:19-cr-00073(VLB), 2020 U.S. Dist. LEXIS 57007, at *12 (D. Conn. Apr. 1, 2020) (granting compassionate release to immunocompromised defendant); *United States v. Latrice Colvin*, No. 3:19-cr-179 (JBA), 2020 U.S. Dist. LEXIS 57962, at *2 (D. Conn. Apr. 2, 2020) (granting release to immunocompromised defendant); *Teresa Ann Gonzalez*, 2020 WL 1536155 (reducing 10-month sentence to time served for 64-year-old defendant with chronic obstructive pulmonary disease); *United States v. Pedro Muniz*, No. 09-cr-0199, 2020 U.S. Dist. LEXIS 59255, at *5 (S.D. Tex. Mar. 30, 2020) (reducing 188-month sentence to time served for man with diabetes, renal disease and hypertension); *United States v. Edward Copeland,* No. 2:05-cr-135-DCN, Dkt. 662 (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to

---

[16] *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/.

[17] Richard Winton, 70% of Inmates Test Positive for Coronavirus at Lompoc Federal Prison, Los Angeles Times, May 9, 2020, available at https://news.yahoo.com/70-inmates-test-positive-coronavirus-163205247.html.

[18] *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/.

[19] Rich Schapiro, *First Federal Inmate to Die of Coronavirus Wrote Heartbreaking Letter to Judge*, NBC News, Apr. 5, 2020, *available at* https://www.nbcnews.com/news/us-news/1st-federal-inmate-die-coronavirus-wrote-heartbreaking-letter-judge-n1176961.

DocuSign Envelope ID: 934499B0-3329-46F7-A059-6EE151416AB0
Case 1:17-cr-00477-PAE   Document 102   Filed 05/15/20   Page 11 of 14

DAVIDOFF HUTCHER & CITRON LLP

Hon. Paul A. Engelmayer
May 15, 2020
Page 11 of 14

"Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic"); *United States v. Samuel Harry Powell*, No. 1:94-cr-316-ESH, Dkt. 98 (D.D.C. Mar. 28, 2020) (granting unopposed motion for compassionate release in light of Covid-19 and finding it "would be futile" to require defendant to first exhaust administrative remedies).

Notably, in the matter of *United States of America v. Daniel Hernandez*, No. 1:18 Cr. 834-04 (PAE), this Court held that in light of the heightened medical risk presented to Mr. Hernandez by the COVID-19 pandemic, extraordinary and compelling reasons existed to reduce Mr. Hernandez's sentence in the manner requested—to wit, releasing Mr. Hernandez from custody and requiring him to serve his first four months of supervised release in home confinement, on specified conditions. Mr. Hernandez's situation is directly analogous to Mr. Nissen's. In fact, Mr. Nissen presents an even more compelling candidate for compassionate release and sentence reduction due to his combination of health and family factors. Further, Mr. Hernandez was convicted of violent crimes, while Mr. Nissen was solely convicted of economic crimes.

### iii. Mr. Nissen suffers from a serious medical condition which makes him especially vulnerable to COVID-19

As discussed above, Mr. Nissen suffers from a pre-existing medical condition, cardiac arrhythmia, which makes him dangerously vulnerable to COVID-19. Several courts have granted a sentence reduction and compassionate release for exactly this condition. *See, e.g.*, *Williams,* No. 3:04-cr-95-MCR, Dkt. 91 (holding that an inmate with a cardiac condition should be released due to the high risk of COVID-19 medical complications). Mr. Nissen also has a respiratory condition. He has an even higher risk of contracting COVID-19 because he is living in close quarters with other inmates. Prisoners have a magnified risk of contracting the coronavirus because social distancing preventative measures are impractical and challenging in crowded jails.[20] *Perez*, No. 1:17-cr-513, 2020 WL 1546422 (finding that prisoners living in close quarters have a significantly higher risk of COVID-19 infection).

The crowded nature of the Otisville prison creates even more risk that Mr. Nissen will contract COVID-19. For example, *Spectrum News* reports that as of May 5, 2020, there are 45 cases of COVID-19 at Otisville.[21] Prison inmates have a significantly higher likelihood of becoming infected with COVID-19 due to the impossibility of social distancing within the confines of prison. *Perez*, 2020 WL 1546422 (concluding that a medically compromised defendant could not provide self-care in a prison because social distancing is impossible).

---

[20] *See* Martha Hurley, *Why Prisoners are at higher risk for the coronavirus: 5 questions answered*, The Conversation, Apr. 17, 2020, https://theconversation.com/why-prisoners-are-at-higher-risk-for-the-coronavirus-5-questions-answered-136111.

[21] *See supra* note 2.

DocuSign Envelope ID: 934499B0-3329-46F7-A059-6EF151416AB0

The problem is particularly acute at FCI Otisville, which has shown it is ill-equipped to handle this current outbreak. From the 19 days in solitary confinement with cellmates, to the lack of cleaning supplies and PPE products, to the masks with 3-4 hour life-spans worn for weeks at a time, FCI Otisville is a ticking time bomb for Mr. Nissen.

If Mr. Nissen, who is at heightened risk of complications, contracts the virus while in prison, he will face insurmountable challenges in caring for himself. There is no known cure or proven treatment for COVID-19, and when combined with Mr. Nissen's preexisting cardiac condition and respiratory problems, his prison sentence could quickly become a death sentence. *See United States v. Kataev*, No. 1:16-cr-00763-LGS-5, Dkt. 779 (S.D.N.Y. Apr. 15, 2020) ("patients with underlying health conditions and risk factors . . . might be at higher risk for severe disease or death from COVID-19.") (citations omitted).

### iv. Mr. Nissen's family situation justifies compassionate release

There is another strong basis upon which Mr. Nissen's request should be granted—the emotional and medical state of his young children. Three-year old Elisabeth has been diagnosed with autism and she has regressed due to the lack of a two-parent household. Twelve-year old Ava has transformed from a highly motivated and strong student to an unmotivated, despondent and emotionally-struggling girl who misses her father. The struggles of his daughters buttress Mr. Nissen's request. These girls need their father. Without him, the long-term effects could be catastrophic.

If Mr. Nissen were released to home confinement, he could be the primary caregiver for his young girls and would provide the care, support and guidance they so desperately need. The Court could of course impose whatever restrictions it sees fit on Mr. Nissen's release to home confinement. These could include measures such as voice monitoring, allowing Mr. Nissen to leave home only for medical appointments and essential caretaking of the children, reporting to the United States Probation Office to commence phone monitoring, and/or filing periodic status reports with the Court. Mr. Nissen just needs to be home, as home is where he will be safe and where he can provide the care and support his children so desperately need.

### v. Mr. Nissen is not a risk for recidivism or a danger to the public and satisfies the other sentence modification criteria

Mr. Nissen has less than 17 months remaining in his sentence for a non-violent crime. He is a first-time offender. He more than satisfies the other criteria for sentence modifications under Sections 3142 and 3553. In determining whether Mr. Nissen's sentence should be modified from the current incarceration to home confinement, the Court evaluates whether he presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). If he does not, the Court looks to the factors outlined in 18 U.S.C. § 3553(a). All of these factors weigh in favor of and support Mr. Nissen's requested relief.

DocuSign Envelope ID: 934499B0-3329-46F7-A059-6EE151416AB0

DAVIDOFF HUTCHER & CITRON LLP

Hon. Paul A. Engelmayer
May 15, 2020
Page 13 of 14

      Specifically, Mr. Nissen is not a danger to the community. He was convicted of a non-violent crime, which although very serious and for which Mr. Nissen is remorseful, cannot be qualified as a "dangerous" crime. Furthermore, neither the Government nor the Court made any such offering or finding during Mr. Nissen's sentencing.

      The Court has already noted Mr. Nissen's positive contributions to society. During sentencing, Your Honor astutely stated:

> The public has little to fear from you, Mr. Nissen, if you are at large. Until this crime, you were very much a positive contributor to your various communities. Unlike many of the violent criminals or drug dealers or serial thieves or fraud perpetrators whom I have occasion all too much occasion to sentence, you do not have any demonstrated proclivity to commit crimes. There are other reasons a meaningful prison sentence is required here, primarily just punishment and to some degree general deterrence. The protection of the public is not one of them.

(Nissen Sentence Tr. 63:1-10). Compassionate release in this case would not only save a father and a husband from a deadly virus, it would not present any threat to the public. *See United States v. Kataev*, No. 1:16-cr-00763-LGS-5, Dkt. 779 (S.D.N.Y. Apr. 15, 2020) (finding that defendant's nonviolent economic crime and lack of threat to the community based on criminal history were major factors in granting compassionate release).

      In *Kataev*, this Court framed the issue as follows: "Defendant was convicted of a nonviolent economic crime, and his prior criminal history does not indicate that he is a danger to the community. Defendant has served a sentence that balances the seriousness of his criminal conduct and his acceptance of responsibility, and the remaining term of incarceration is not such a substantial portion of his sentence that it would override the compelling circumstances found herein." *Id*. at 6. Under the robust body of compassionate release case law detailed above, these circumstances alone qualify as an extraordinary and compelling reason warranting a modest modification in Mr. Nissen's current sentence.

      Mr. Nissen also satisfies Attorney General Barr's criteria for prisoner release to home confinement as set forth in his memorandums to the BOP of March 26, 2020 and April 3, 2020 respectively. Specifically, Mr. Nissen meets those criteria because:

1. At 47 with a cardiac arrhythmias he has an increased risk of contracting COVID-19 and experiencing related complications in prison.
2. Otisville FCI is a low security facility.
3. He has not engaged in violent or any gang related activity while incarcerated.
4. He has a minimum score under PATTERN.
5. His conviction was non-violent and economic in nature.

DocuSign Envelope ID: 934499B0-3329-46F7-A059-6EE151416AB0

Case 1:17-cr-00477-PAE   Document 102   Filed 05/15/20   Page 14 of 14

DAVIDOFF HUTCHER & CITRON LLP

Hon. Paul A. Engelmayer
May 15, 2020
Page 14 of 14

6. He has demonstrated a viable re-entry plan where he would be living at home with his wife and three children and providing the care for all three children.

In the end, the relevant factors of § 3553(a) weigh strongly in favor of the relief requested. Mr. Nissen has fully accepted responsibility for his crime. During Mr. Nissen's sentencing, the Court observed he was remorseful and forthright in addressing his wrongful actions. Mr. Nissen has less than 17 months remaining on his sentence and now lives in constant fear that should be contract this deadly virus he may never get the chance to go home. He has seen the effect of his actions and his incarceration on his family, friends, wife, and most importantly his children. The damage done to his children alone is more than sufficient to ensure that he will never engage in future misconduct. He is ashamed of what his continued incarceration is doing to his young girls. A modest change in his incarceration to home confinement, under whatever terms and conditions the Court and the government deem appropriate, is warranted under these circumstances.

### III. CONCLUSION

COVID-19 is lethal to compromised prisoners, like Mr. Nissen, with pre-existing medical conditions. New York is the epicenter of this virus, and Otisville already has a significant number of cases. Mr. Nissen presents no risk of recidivism, and his young daughters desperately need his presence. For the foregoing reasons, and in order to protect Mr. Nissen's health and his family's well-being, we respectfully implore Your Honor to find extraordinary and compelling circumstances under 18 U.S.C. § 3582(c), to grant Mr. Nissen a compassionate release, and to modify his sentence to arrange for his immediate release from prison.

We do not lightly characterize Mr. Nissen's sentence as a possible "death sentence" but, with the COVID-19 pandemic and the reported cases at Otisville, Mr. Nissen's pre-existing heart condition has put him at peril of the most severe sentence imaginable. Thus, it is with the most sincere and heartfelt thank you that we present this request for Your Honor's consideration of this compassionate release.

Respectfully submitted,

*David Wander*
_____
David H. Wander, Davidoff Hutcher & Citron LLP (New York, NY)
Jason A. Pithie, Pithie & Associates, P.C. (Weymouth, Massachusetts)
Kevin M. Cloutier, Sheppard Mullin Richter & Hampton LLP (Chicago, Illinois)


Enclosures

cc: Douglas Zolkind, AUSA (via email) (with enclosures)