

**DAVIDOFF HUTCHER & CITRON LLP**

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

GARDEN CITY
ATTORNEYS AT LAW
200 GARDEN CITY PLAZA
GARDEN CITY, NY 11530
(516) 248-6400

ALBANY
GOVERNMENT RELATIONS
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
GOVERNMENT RELATIONS
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

August 13, 2020

*Via Email and ECF*
Honorable Paul A. Engelmayer
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:  Release of Jason Nissen under CARES Act
       Docket No. 17 Cr. 477 (PAE)

We write on behalf of Jason Nissen, who has just suffered from unbelievably cruel and inhumane prison conditions. Because Jason tested positive for the coronavirus four times, he was locked alone in a tiny cell for 55 days in isolation quarantine with almost no meaningful human contact.[1]

The isolation imposed on Jason is equivalent to a four-level increase in custody, akin to a super-max facility, reserved for the most dangerous criminals who have been convicted of the most heinous crimes.[2]

---

[1] Jason has spent more time in isolation than any other prisoner in Otisville and, perhaps, than any other prisoner in the entire United States.

[2] Jason has been treated worse because inmates in super-max custody are given one hour out in the yard daily, while Jason has been given only 40 minutes outside of his cell per week. This severe, cruel, and excessive punishment is certainly not what Your Honor had in mind sentencing Jason.

DocuSign Envelope ID: 9FD00B20-B80E-4771-B7FD-FE9691ECD5C5
Case 1:17-cr-00477-PAE Document 108 Filed 08/13/20 Page 2 of 4

DAVIDOFF HUTCHER & CITRON LLP

Honorable Paul A. Engelmayer
August 13, 2020
Page 2

Therefore, Jason seeks reconsideration of the Court's May 22, 2020 denial of Mr. Nissen's motion for compassionate release (Doc. 107) pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on the availability of new evidence of compelling circumstances militating in favor of release.[3]

Reconsideration of the denial of compassionate release is warranted here given the extraordinary and compelling circumstances given Jason's medical conditions, the COVID-19 pandemic, his ability to transition seamlessly back into society, his long history of staying out of trouble, and the difficult circumstances he has endured over the past two months.[4]

Although Your Honor previously expressed skepticism regarding the seriousness of Jason's medical condition,[5] Jason's immune system, apparently, was too weak to fight off the coronavirus; *he tested positive four times*.[6] As a result, Jason was locked in solitary isolation in a

---

[3] "The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 403 n.6 (S.D.N.Y. 2011) (quoting *Patterson v. United States*, No. 04 Civ. 3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citation and quotation marks omitted). Pursuant to Criminal Local Rule 49.1, a motion for reconsideration shall be filed and served within fourteen days after the Court's determination of the original motion. However, this court has discretion to excuse an untimely filing where the circumstances so warrant. *See United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 1331955, at *1–2 (S.D.N.Y. Mar. 23, 2020) (permitting reconsideration of decision on motion for compassionate release because "courts retain the discretion to excuse an untimely filing, and this Court will do that here").

[4] Mr. Nissen has satisfied the administrative prerequisites for the Court to have jurisdiction under Section 3582(c)(1)(A) as he submitted a compassionate release request on March 31, 2020 to Otisville's warden, who did not take action on it. Mr. Nissen satisfied his administrative remedy requirement by submitting an administrative request to the Otisville Warden, James Petrucci, requesting that the BOP file a motion for compassionate release on March 31, 2020. **See Exhibit A**. More than 30 days have passed, and Warden Petrucci has not submitted the requested motion or otherwise replied to Mr. Nissen's request. Thus, jurisdiction exists because Mr. Nissen properly submitted a compassionate relief request to the Otisville warden on March 31, 2020, in response to which the BOP never moved for a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A); *id.* (d)(2)(B)(ii), (iii); 28 C.F.R. § 571.61(b); BOP Program Statement 5050.50, § 2(b). Further, the undersigned sent Warden James C. Petrucci a letter on July 24, 2020 requesting Jason's release on the same grounds asserted herein. Warden Petrucci failed to respond.

As noted in the May 22, 2020 Order, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A).

[5] Jason suffers from a serious cardiac arrhythmia condition, which his cardiologist, Dr. Richard A. Shlofmitz, Chairman of Cardiology of St. Francis Hospital, believes leaves Jason especially vulnerable to serious illness or even death.

[6] Jason first tested positive for COVID-19 on June 12, 2020.

DAVIDOFF HUTCHER & CITRON LLP

Honorable Paul A. Engelmayer
August 13, 2020
Page 3

7 ½' by 12' cell for 55 days. For all but forty (40) minutes a week, Jason had no meaningful human contact for 55 days.

When Your Honor sentenced Jason, a first-time, non-violent, white-collar offender, the Court intended for Jason to serve his sentence in a minimum-security camp at FCI Otisville. The punishment Jason received over the past two months -- isolation for 55 days -- has been far more severe.

Almost 130 years ago, the Supreme Court of the United States acknowledged the grave impact of subjecting people to solitary confinement.[7] In 2018, Justice Sotomayor wrote, "[W]e do know that solitary confinement imprints on those that it clutches a wide range of psychological scars. . . . Courts and corrections officials must accordingly remain alert to the clear constitutional problems raised by keeping prisoners . . . in 'near-total isolation' from the living world in what comes perilously close to a penal tomb."[8]

In 2016, the National Commission on Correctional Health Care published the following position statement: "Prolonged (greater than 15 consecutive days) solitary confinement is cruel, inhuman and degrading treatment, and harmful to an individual's health." Moreover,

> [s]olitary confinement as an administrative method of maintaining security should be used only as an exceptional measure when other, less restrictive options are not available, and then for the shortest time possible. Solitary confinement should never exceed 15 days. **In those rare cases where longer isolation is required to protect the safety of staff and/or other inmates, more humane conditions of confinement need to be utilized.**[9]  [emphasis added]

In 2015, the United Nations General Assembly adopted a revised version of the Standard Minimum Rules for the Treatment of Prisoners, also known as the Mandela Rules. The Mandela Rules prohibit indefinite and prolonged solitary confinement, with prolonged solitary confinement defined as "confinement of prisoners for 22 hours or more a day without meaningful human contact" exceeding 15 consecutive days.[10]

---

[7] *In re Medley,* 134 U.S.160, 168 (1890).

[8] *Apodaca v. Raemisch*, 139 S. Ct. 5, 9, 10 (2018) (statement of Sotomayor, J., respecting the denial of certiorari) (citation omitted).

[9] National Commission on Correctional Healthcare, Solitary Confinement (Isolation), https://www.ncchc.org/solitary-confinement.

[10] U.N. Economic & Social Council, Standard Minimum Rules for the Treatment of Prisoners (the Mandela Rules), Res. E/CN.15/2015/L.6/Rev.1 (May 2015), https://www.unodc.org/documents/commissions/CCPCJ/CCPCJ_Sessions/CCPCJ_24/resolutions/L6_Rev1/ECN152015_L6Rev1_e_V1503585.pdf.

DocuSign Envelope ID: 9FD00B20-B80E-4771-B7FD-FE9691FCD5C5
Case 1:17-cr-00477-PAE   Document 108   Filed 08/13/20   Page 4 of 4

DAVIDOFF HUTCHER & CITRON LLP

Honorable Paul A. Engelmayer
August 13, 2020
Page 4

Jason was locked in isolation quarantine in a small cell, for nearly two full months. While this cruel and inhumane punishment, obviously, has been a violation of Jason's Eighth Amendment rights, the purpose of this letter is not to caste blame, but to plead for Jason's immediate release.

Jason satisfies the standard for release because he has served a significant portion of his sentence: he has less than 14 months remaining until his release date of October 7, 2021, and less than two months until his halfway house eligibility date of October 7, 2020.  Upon information and belief, Bureau of Prisons is prioritizing for consideration those inmates who have 18 months or less remaining in their sentence and have served 25% or more of their sentence.  Jason clearly qualifies.

On August 10, 2020, Jason was finally released from isolation because the results from his latest test -- on July 27 -- came back negative.  But now, he is being housed in a two-bunk cell with the next bed only 3 ½ feet away.  Jason told me he is afraid he will die in prison and never see his wife and three young daughters again.

In denying Jason's prior request for compassionate release, the Court was concerned that Jason had not been punished enough for his crime: "[t]he interest in just punishment would be badly disserved by cutting Nissen's sentence for carrying off a $70 million fraud to, as he proposes, under a year's imprisonment." Doc. 107.  I submit that, after 55 days in isolation through no fault of his own, Jason has been punished more than enough.

Accordingly, I beg Your Honor to facilitate the humane release of my client, Jason Nissen.

                                                                             Respectfully submitted,

                                                                             *David Wander*

                                                                             David H. Wander

Enclosures

cc with enclosures:
Douglas Zolkind, AUSA
Lara Pomerantz, AUSA
Laura Birger, Chief of the Criminal Division, SDNY
Audrey Strauss, Acting United States Attorney for the Southern District of New York