

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 19, 2020

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Jason Nissen*, 17 Cr. 477 (PAE)

Dear Judge Engelmayer:

    The Government respectfully submits this letter in opposition to defendant Jason Nissen's motion for reconsideration of the Court's denial of his motion for compassionate release. As set forth below, there has been no change in circumstances warranting a reversal of the Court's prior determination. Since Nissen has now recovered from an asymptomatic case of COVID-19, he faces, if anything, a reduced risk of contracting the virus and suffering severe health consequences in prison.

### The Defendant's Prior Motion

    On May 15, 2020, the defendant moved for compassionate release under 18 U.S.C. § 3582(c) arguing that he suffers from certain medical conditions that heighten his vulnerability to COVID-19 and that he also needed to return home to assist in caring for his daughters, who were experiencing serious medical and emotional problems. (Dkt. 102.) On May 20, 2020, the Government submitted its opposition, arguing that the defendant had failed to exhaust his administrative remedies and that his motion should be denied on the merits. (Dkt. 104.) The next day, the defendant filed a reply. (Dkt. 106.)

    On May 22, 2020, the Court issued an opinion denying the defendant's motion. (Dkt. 107.) The Court began by noting that the Government's exhaustion argument "appears substantial" but that the Court "need not rule on whether it does in fact preclude granting Nissen's motion" because the Court was denying the motion on the merits. (*Id.* at 3.) The Court noted that in recognition of the fact that "the realities of life as an inmate presents added challenges for a heightened-risk inmate who contracts the virus to care for himself," courts have, in "limited instances," ordered the compassionate release of "high-risk" inmates serving federal sentences. (*Id.* at 4.) However, the Court expressed "considerable doubt whether Nissen is at heightened risk—whether he is materially more vulnerable to the effects of COVID-19 than an average (non-high-risk) inmate at

Hon. Paul A. Engelmayer
August 19, 2020

FCI Otisville." (*Id.*) The Court noted several reasons why it was "skeptical of Nissen's factual basis for claiming heightened vulnerability to COVID-19." (*Id.* at 5.)

The Court held that it "need not rely on this point, either" because "even assuming *arguendo* that Nissen's medical conditions were sufficient to supply a factual basis for compassionate release under § 3582(c)(1)(A), a reduction in his sentence is not supported by the § 3553(a) factors. That factor is dispositive here." (*Id.*) As the Court explained, "reducing Nissen's 27-month sentence to a sentence of less than seven months would yield an overall sentence that, far from being consistent with the 'factors set forth in section 3553(a)' as § 3582(c)(1)(A) requires, would be highly inconsistent with those factors." (*Id.*) Noting that "Nissen's case stands in sharp contrast to those in which the Court has ordered the release of heightened-risk inmates," the Court found that "Nissen . . . is not close to the midway point of his sentence. The vast majority of his sentence is ahead of him. In these circumstances, his release now would neuter the sentence the Court thoughtfully imposed and undermine the goals of just punishment and general deterrence that largely undergirded it." (*Id.* at 6.) Accordingly, the Court found that "the § 3553(a) factors are inconsistent with the termination of Nissen's prison sentence" and denied his motion. (*Id.*)

### **The Defendant's Motion for Reconsideration**

On or about June 12, 2020, the Bureau of Prisons ("BOP") tested the defendant for COVID-19 because he had been exposed to another individual who had tested positive for COVID-19. Shortly thereafter, the defendant's test came back positive. The defendant was placed in quarantine, consistent with standard and prudent BOP procedures, to minimize the risk of the defendant infecting others at FCI Otisville. While in quarantine, the defendant was confined to a standard prison cell (the same size cell that would normally be occupied by two inmates). He had access to his personal property, and to phones and showers at prescribed times. He was permitted limited time outside the cell to avoid the risk of exposure to others.

Consistent with the standard procedures BOP was following at the time, the defendant was kept in quarantine until he tested negative for COVID-19. He was tested at regular intervals, and because his tests remained positive, he was required to remain in quarantine. He was ultimately returned to the general prison population on or about August 9, 2020, after testing negative.

While the defendant was quarantined, on July 1, 2020, the defendant submitted a supplemental request to the BOP for compassionate release, arguing, among other factors, that he suffers from certain medical conditions that heighten his vulnerability to COVID-19. On July 15, 2020, the FCI Otisville Warden denied the request, finding that a review of the defendant's medical records revealed that he had been diagnosed with gastro-esophageal reflux disease and osteoarthritis of the knee, neither of which was a condition that placed him at heightened risk for complications due to COVID-19.

On July 24, 2020, the defendant's counsel wrote to the FCI Otisville Warden to "request his release from confinement . . . in accordance with the CARES Act," arguing that he "has served a significant portion of his sentence and should be released" and that he "has now been locked up

Hon. Paul A. Engelmayer
August 19, 2020

in isolation for thirty-nine (39) days, in conditions akin to a super-max facility." Counsel wrote to the Warden again on August 13, 2020, after the defendant had been returned to the general prison population, arguing that the defendant should be released to home confinement under 18 U.S.C. § 3624.

The same day, the defendant filed the instant motion with the Court, seeking reconsideration of the Court's denial of his motion for compassionate release. (Dkt. 108.) He argues that he "has just suffered from unbelievably cruel and inhumane prison conditions. Because Jason tested positive for the coronavirus four times, he was locked alone in a tiny cell for 55 days in isolation quarantine with almost no meaningful human contact." (*Id.* at 1 (footnote omitted).)

**Discussion**

Less than three months ago, this Court determined, after a detailed and thoughtful analysis, that "even assuming *arguendo* that Nissen's medical conditions were sufficient to supply a factual basis for compassionate release"—a proposition for which the Court expressed "considerable doubt"—a reduction in the defendant's sentence was "highly inconsistent" with the § 3553(a) factors because the defendant was "not close to the midway point of his sentence" and "his release now would neuter the sentence the Court thoughtfully imposed and undermine the goals of just punishment and general deterrence that largely undergirded it." (Dkt. 107 at 5-6.)

Since then, the defendant contracted COVID-19 and subsequently recovered from it, and was, according to his medical records, asymptomatic despite testing positive. According to recent studies, it is very likely that the defendant now faces a significantly *lower* risk of suffering serious complications due to COVID-19. *See, e.g.*, Katherine J. Wu, "*Scientists See Signs of Lasting Immunity to Covid-19, Even After Mild Infections*," N.Y. Times (Aug. 17, 2020), *available at* https://www.nytimes.com/2020/08/16/health/coronavirus-immunity-antibodies.html ("Scientists who have been monitoring immune responses to the virus are now starting to see encouraging signs of strong, lasting immunity, even in people who developed only mild symptoms of Covid-19, a flurry of new studies suggests. Disease-fighting antibodies, as well as immune cells called B cells and T cells that are capable of recognizing the virus, appear to persist months after infections have resolved — an encouraging echo of the body's enduring response to other viruses.").

Undoubtedly, it was very difficult for the defendant to endure 55 days under quarantine conditions at FCI Otisville. But this period of quarantine does not supply a rationale for prematurely releasing him from prison. The BOP has, for good reason, taken aggressive and prudent actions to prevent the spread of the virus to other inmates and staff. By diligently testing inmates who are exposed to COVID-19-positive patients, and then keeping inmates who test positive quarantined until they test negative, BOP has been able to successfully prevent the virus from overwhelming the prison system. At present, FCI Otisville has zero COVID-19-positive inmates and only one COVID-19-positive staff member; has experienced zero inmate or staff deaths due to COVID-19; and has had 28 inmates and 14 staff members recover from COVID-

Hon. Paul A. Engelmayer
August 19, 2020

19.[1]  These figures strongly suggest that the measures taken by BOP at FCI Otisville have been appropriate to address the pandemic, and have not unduly subjected the defendant to harsh treatment.

      In sum, there is no basis to grant reconsideration of the Court's denial of the defendant's motion for compassionate release.  The balancing of the § 3553(a) factors remains the same today as when the Court decided the motion.  And, if anything, the Court's skepticism as to the defendant's purported "high risk" medical conditions appears to have been well-founded: the defendant contracted COVID-19 but apparently experienced no symptoms, and has since fully recovered from the virus without any complications.  His motion for reconsideration should be denied.

      Respectfully submitted,

      AUDREY STRAUSS
      Acting United States Attorney

By:   s/                      
     Douglas S. Zolkind
     Lara Pomerantz
     Assistant United States Attorneys

---

[1] *See* https://www.bop.gov/coronavirus/ (last accessed August 19, 2020).