UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

JASON NISSEN,
                              Defendant.

17 Cr. 477 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

Defendant Jason Nissen has moved for reconsideration of the Court's May 22, 2020 order, Dkt. 107 ("May Op.") denying his motion for compassionate release from FCI Otisville pursuant to 18 U.S.C. § 3582(c). *See* Dkt. 108 ("Def. Mem."); Dkt. 111 ("Def. Reply"). The Government opposes the motion. Dkt. 110 ("Gov't Opp'n"). For the following reasons, the motion is denied.

On September 6, 2019, the Court sentenced Nissen to 27 months' imprisonment for defrauding at least five victims of more than $70 million in loans that he claimed were being used to grow his ticket resale business but were in fact used largely to pay down old debt he could not otherwise afford to service.[1] The fraud eventually unraveled, Nissen's business failed, and the lenders were left with massive losses. On November 7, 2019, Nissen self-surrendered and began serving his sentence. He has been incarcerated since that time. Nissen's estimated release date is October 7, 2021.

---

[1] A forensic accounting commissioned by the Court and supervised by the Government determined that approximately $1 million of this money was used by Nissen for personal expenses. *See* Dkt. 76 ("Sentencing Tr.") at 7.

In resolving Nissen's motion for compassionate release, the Court expressed skepticism that—on the record before it—Nissen was "materially more vulnerable to the effects of COVID-19 than an average (non-high-risk) inmate at FCI Otisville." May Op. at 4. The Court did not ultimately rely on Nissen's health in denying his motion, however. Instead, the Court, "assuming *arguendo* that Nissen's medical conditions were sufficient to supply a factual basis for compassionate release under § 3582(c)(1)(A)," found that "a reduction in his sentence is not supported by the § 3553(a) factors." *Id.* at 5. Calling this "dispositive," the Court found that "reducing Nissen's 27-month sentence to a sentence of less than seven months would yield an overall sentence that, far from being consistent with the 'factors set forth in section 3553(a)' as § 3582(c)(1)(A) requires, would be highly inconsistent with those factors." *Id.* Specifically, the Court noted that at sentencing, it had

> imposed a sentence far below the Guidelines range of 97–121 months imprisonment. But it was unable to find reasonable a sentence lower than 27 months, in light of, *inter alia*, the scale, duration, gravity, and at points sophistication of Nissen's fraud. *See* [Dkt. 81("Sentencing Tr.")] at 55. In light of these factors, the Court stated at sentencing, "there is simply some level below which a sentence simply cannot go lest it not reflect just punishment." *Id.*; *see also id.* at 69–70. The interest in just punishment would be badly disserved by cutting Nissen's sentence for carrying off a $70 million fraud to, as he proposes, under a year's imprisonment.

*Id.*

In moving for reconsideration, counsel for Nissen reports that following the Court's decision, Nissen in fact contracted COVID-19 at FCI Otisville and thereafter spent 55 days in quarantine before testing negative for the virus. *See generally* Def. Mem.; Def. Reply. Nissen argues that this information both vindicates his claims of being at heightened risk and provides a basis to reassess the § 3553(a) factors. The Government opposes the motion. It points out that despite testing positive for COVID-19, Nissen's BOP medical records reflect that he remained asymptomatic and therefore did not suffer any heightened effects from the virus, or indeed, any

effects at all other than being placed in quarantine. The Government further argues that Nissen fails to present any information to materially alter the Court's § 3553(a) analysis of just three months ago. The Court holds with the Government.

As noted, the Court based its denial of Nissen's original compassionate release motion on its assessment of the § 3553(a) factors. In particular, the Court determined, as it had at sentencing, that the 27 month sentence imposed—a substantial departure from the Guidelines range of 97–121 months imprisonment—was the lowest possible sentence that would still reflect just punishment for an extended, $70 million fraud. Nissen has now served just under 10 months of his sentence: barely 10% of the recommended Guidelines sentence and just over a third of the sentence imposed by the Court. While recognizing that Nissen's 55 asymptomatic days in BOP quarantine made his conditions of confinement more restrictive than at the times of sentencing or his initial motion for compassionate release, the Court is unable to conclude that Nissen's release at this point can be justified under 18 U.S.C. § 3582(c).[2]

---

[2] Nissen's counsel argues that his time in quarantine was akin to "hard time" and "torture." The Court agrees that these conditions of confinement made this portion of his prison sentence more arduous than could have been anticipated at the time of sentencing. Nissen, however, overstates his case in likening himself to defendant Roland Martin, a Nine Trey gang member whose prison sentence, the Court explained at sentencing, was lower than it otherwise would have been on account of the fact that Martin had been attacked while in pretrial custody, requiring his surgery and hospitalization. *See* Def. Reply at 2–3. Without diminishing the isolation and fear that Nissen surely experienced while in quarantine, Martin's experience in prison was objectively more onerous. He was stabbed multiple times by two other inmates, resulting in two collapsed lungs and a lacerated liver. *See* 18 Cr. 834, Dkt. 367 at 12–13. While imposing a materially lower sentence on account of Martin's having been attacked while in the care and custody of prison authorities, the Court nevertheless imposed a sentence of 66 months' imprisonment, *id.* at 32–33. Relevant here, the Court this spring denied Martin's motion for compassionate release, finding, in part, that "[c]onverting Martin's sentence to one of home confinement, when he as served just 16 months of a 66-month term of incarceration, would disserve . . . important § 3553(a) factors," *see* 18 Cr. 834, Dkt. 465 at 8.

Nissen's argument that the period of time he spent in quarantine was extreme is likewise misplaced. Even accepting Nissen's premise that periods of time in solitary confinement are

Nissen's motion for reconsideration is therefore denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket 108.

SO ORDERED.

                                             *Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: August 31, 2020
       New York, New York

---

relatively unusual for white collar defendants, it is far from uncommon in the prison system generally, and Nissen's citationless claim that "Jason has spent more time in isolation than any other prisoner in Otisville *and, perhaps, than any other prisoner in the entire United States*," Def. Mem. at 1 n.1 (emphasis added), is easily refuted. *See, e.g.*, Ass'n of State Corr. Admin'rs & The Liman Ctr. for Pub. Int. L. at Yale L. Sch., *Reforming Restrictive Housing: The 2018 ASCA-Liman Nationwide Survey of Time-in-Cell* 14 (2018), https://law.yale.edu/sites/default/files/area/center/liman/document/asca_liman_2018_restrictive_housing_released_oct_2018.pdf (in a survey of 30 jurisdictions, 45% of prisoners in restrictive housing had been in such housing for more than 3 months, with 10% in such housing for one to three years, 5% for three to six years, and 5%—representing nearly 2,000 individuals—in such housing for more than six years).