UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JASON NISSEN,

                                    Defendant.

---

17 Cr. 477 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

On August 1, 2017, Jason Nissen was charged in a one-count Information with wire

fraud, in violation of 18 U.S.C § 1343.  The charge was based on a scheme to defraud lenders of

more than $70 million, in which Nissen falsely represented that the loans would be used to grow

his ticket-resale business, when in fact they were largely used to pay down debt that Nissen was

unable to pay.  Dkt. 10.  The Information also sought forfeiture to the United States, pursuant to

18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, of all property that constituted or was derived

from proceeds obtained by Nissen that were traceable to his offense.  *Id.*  It included a substitute-

asset provision stating that if forfeitable property could not be located or obtained, the United

States would seek, pursuant to 21 U.S.C. § 853(p), the forfeiture of any other property of

Nissen's up to the forfeitable amount.  *Id.*

On March 28, 2018, Nissen pled guilty.  On September 6, 2019, the Court sentenced him

to, principally, 27 months' imprisonment.  Dkts. 75–76.[1]  In connection with sentencing, the

Court entered, with Nissen's consent, a Preliminary Order of Forfeiture and Money Judgment.

---

[1] Nissen is presently serving his sentence.  On May 22, 2020, the Court denied Nissen's motion
for compassionate release, Dkt. 107, and on August 31, 2020, denied Nissen's motion for
reconsideration, Dkt. 112.

Dkt. 73 ("Forfeiture Order").  The Forfeiture Order required Nissen to forfeit to the United States $71,678,669.90, the sum of the proceeds traceable to the offense.  The Forfeiture Order further recognized that proceeds of Nissen's scheme were untraceable with the exercise of due diligence. *Id*. at 3.  Accordingly, the Forfeiture Order authorized the Government "to seek forfeiture of substitute assets of the defendant up to the uncollected amount of the Money Judgment." *Id.* at 3 (citing 21 U.S.C. § 853(p)).

As of November 21, 2019, the entire Money Judgment remained outstanding. Accordingly, the Government moved for a Preliminary Order of Forfeiture as to one particular substitute asset of Nissen's: his ownership interest in the real property located at 82 Woodhollow Road, Roslyn Heights, NY 11557 ("the Property").  The Government's motion stated that, upon forfeiture, that interest would be applied to the Money Judgment owed by Nissen.  Dkt. 83 at 3–4.

On December 10, 2019, the Court issued a Preliminary Order of Forfeiture as to Nissen's ownership interest in the Property.  The Court found, pursuant to 21 U.S.C. § 853(g), that the United States was entitled, pending any assertion of third-party claims, to reduce the Property to its possession. Dkt. 92.  The Court ordered that Nissen's right, title, and interest in the Property was forfeited to the United States, and authorized the Government to take possession of the Property. *Id.*

Between January 10 and 14, 2020, three entities separately petitioned the Court for a hearing to adjudicate their interests in the property. *See United States v. Peterson*, 820 F. Supp. 2d 576, 582 (S.D.N.Y. 2011) ("After the court enters a forfeiture order based on a criminal conviction, third parties may petition the court to adjudicate their interests in the property subject to forfeiture and to amend the forfeiture order.").  Two—Credit Cash NJ, LLC ("Credit Cash") and Entrepreneur Growth Capital LLC ("EGC") (together "petitioners")—represented that they

had each loaned money to Nissen and his wife, Haydee Nissen, to purchase the property, that the Nissens had guaranteed these loans, and that their interests were secured by mortgages. Credit Cash represented that it had loaned the Nissens $1 million, that no principal had been repaid, and that—between unpaid principal, a financing fee, late fees, legal fees, and default interest—it was now owed $1,206,941.24. Dkt. 93. EGC represented that it had loaned the Nissens $1.9 million, that no principal had been repaid, and that—between unpaid principal, default interest, and legal fees—it was owed $2,966,512.14. Dkt. 94. The third entity, Falcon Statement Partners IV, L.P., an identified lender victim of Nissen's fraud, with an affiliate, represented that, since September 17, 2018, it had held a $43 million judgment against Nissen based on his failure to repay loans it had made to him, asserted a claim in that amount against the Property, and sought a hearing to adjudicate its interest. Dkt. 95.

On February 21, 2020, in response, Haydee Nissen petitioned the Court to amend the earlier Forfeiture Order to exclude the Property from the forfeitable assets. Dkt. 97. She argued that she is an innocent owner, that she holds an interest in the Property as a tenant by the entirety (with Nissen) and cannot be displaced of that interest, and that the civil forfeiture laws do not permit the Property, where she resides with her two daughters, to be forfeited. *Id.*

On March 20, 2020, petitioners jointly replied, principally to correct false claims in Haydee Nissen's submission. Dkt. 100. Petitioners noted, *inter alia*, that contrary to Haydee Nissen's suggestions, (1) Nissen had paid for the Property with funds that included significant fruits of the fraud; (2) Nissen and Haydee Nissen had each unconditionally guaranteed the loans from petitioners, giving petitioners a lien on and mortgage against the Property as security for those loans; and (3) Haydee Nissen had actively participated in securing the loans on those terms. *Id.*; *see also* Dkt. 101 (declaration of Dean Landis).

On November 27, 2020, petitioners asked the Court to issue an interlocutory order to sell the Property, with the proceeds to be distributed pursuant to New York law based on the priority of liens.  Dkt. 117.[2]  Petitioners noted that, under the terms of the guarantees executed by the Nissens in connection with the mortgages, petitioners are the priority lienholders to the Property, *id*. at 3, and that the Government has conceded that petitioners hold priority to Nissen's earlier interest (which, following its forfeiture, is now the Government's interest), *id*. at 3–4.  Further, to the extent that Haydee Nissen had objected to the Property's forfeitability, petitioners stated, it was not an interest of hers, but "the defendant's ownership interest in the real property," which had been held forfeited under the consented-to Forfeiture Order.  *Id*. (quoting Dkt. 92).  Petitioners asked the Court now to act to order the sale of the Property, because its value is diminishing.  *Id*. at 4.  They noted that Haydee Nissen, while living in the Property, had not made any mortgage payments during the preceding 1,270 days and counting; had ceased to pay property taxes; and a tax lien imposed on the Property was, with interest, more than $58,000.  *Id*.  The Property today, petitioners claimed, is worth far less than the $2,966,512.14 due to EGC alone.  *Id*.  And, the Property's interlocutory sale, petitioners argued, "would prevent the further diminishment of the Property's already diminished value."  *Id*.

On December 18, 2020, Haydee Nissen responded, opposing the sale.  Dkt. 121.  Principally, she likened the relief petitioners sought to a mortgage foreclosure, "which would result in the eviction of Haydee and her two young daughters during a nationwide pandemic, during a statewide ban on foreclosures and a nationwide ban on evictions."  *Id*. at 1.  She also

---

[2] Petitioners initially sought the same relief in a letter dated October 21, 2020.  Dkt. 113.  The Court, however, denied that application without prejudice, having been alerted to the fact that the law firm representing petitioners was WilmerHale, with which the Court was earlier affiliated, while inviting a similar application filed by a different law firm.  Dkt. 114.

asserted that sale was improper because, *inter alia*, she is an innocent owner and principles of comity disfavor the sale.  *Id*. at 2–3.

In a December 28, 2020 reply, petitioners responded to these arguments.  Dkt. 123.  At the same time, petitioners modified their request, urging that the Court—while entering an interlocutory sale order—delay the execution of the sale until June 2021, in recognition of the hardship caused by ousting Haydee Nissen and her daughters from the Property during the pandemic.  *Id.* at 4.  Petitioners asked that, were the Court to authorize a delayed sale, Haydee Nissen be ordered—to preserve the Property's value—to pay the outstanding and monthly mortgage payments, pay the outstanding and 2020 property tax payments, maintain insurance on the Property, and take other necessary steps to preserve its value.  *Id.*

On January 11, 2021, the Court asked the Government for its views as to Haydee Nissen's defenses to forfeiture that she is an "innocent owner" and a "tenant by the entireties"; whether her co-ownership with Jason Nissen of his interest in the Property prevents the Court from ordering its sale to preserve its value; and the pending application by the petitioners for authorization to sell the property.  Dkt. 124.  On January 15, 2021 the Government responded. Dkt. 126.  The Government argued that the defenses cited by Haydee Nissen are applicable only to civil, rather than criminal, forfeiture actions.  It argued that the United States and Haydee Nissen each have an interest in the Subject Property, deriving from the Nissens' earlier shared interest, although these are subject to the superior interests of Credit Cash and EGC.  *Id.* at 2. Under New York State law, the Government explained, because a tenancy by the entirety is a form of real property ownership available only to parties married at the time of the conveyance, and because under the Substitute Asset Order all of Jason Nissen's right, title, and interest in the Subject Property has been forfeited to the United States, the Nissens' tenancy by the entirety has

been converted to a tenancy in common in which each party (Haydee Nissen and the United States) holds an undivided one-half interest in the property. *Id.* at 3. At the same time, the Government noted that, "in the likely event that the superior mortgage interest of EGC and Credit Cash is greater than the value of the Subject Property, [that] would leave nothing for Nissen and the United States to divide." *Id.* at 3 n.4. Finally, the Government stated that Haydee Nissen's present ownership of an interest in the Property does not prevent the Court from ordering a sale of the property, because both Federal Rule of Civil Procedure 32.2 and 21 U.S.C. § 853(g) give the Court the power to order such a sale and there is good cause to do so here. *Id.* at 4–5.[3]

Substantially for the reasons set out in petitioners' persuasive submissions and the Government's helpful memorandum, the Court agrees that an interlocutory sale order is warranted. In brief: A valid Forfeiture Order has been entered based on Nissen's conviction. A Preliminary Order of Forfeiture has identified Nissen's ownership interest in the Property as forfeitable as a substitute asset. Dkt. 92.[4] The United States' interest in the Property, deriving

---

[3] On January 15, 2021, the Court also received two successive letters from counsel for Taly USA Holdings, Inc. and SSL USA Holdings, LLC (together "Taly"), notifying the Court that Taly had commenced an action against Jason Nissen in state court and that a New York State Supreme Court Justice had issued an attachment against the Property and directed the sheriff to seize the asset. *See* Dkt. 127 (attaching both letters). Although Taly stated that it reserves its rights in the state-court action, it clarified in its second letter that it does not oppose the petitioners' requested order of sale. *Id.*

[4] Petitioners and Haydee Nissen debate whether fruits of Nissen's fraud were used to fund, in part, the purchase of the Property. Because Nissen's interest in the property has been forfeited on a substitute-assets theory, that issue is not determinative here. In all events, the record establishes that the Property was purchased in part with funds that Nissen had fraudulently obtained. Before sentencing, the Court commissioned an analysis of the extent to which the proceeds of the fraud had been used for Nissen's personal gain, as opposed to paying off loans to prior lenders to his ticket-resale business. Dkt. 51. The detailed analysis conducted by Kroll, an

from Nissen's former interest, is distinct from Haydee Nissen's interest in the Property, which

survives.  It is undisputed that petitioners' interests in the Property are superior to those of both

the United States and Haydee Nissen, insofar as petitioners' interests were superior to the

Nissens' earlier shared interest, Jason Nissen's share of which has been forfeited to the United

States.  Dkt. 117 at 2.  And petitioners have convincingly shown that the Property has diminished

in value and is at substantial risk of continuing to diminish in value, given Haydee Nissen's

longstanding failure to pay taxes, mortgage payments, or, apparently, insurance payments on the

Property.  As petitioners demonstrate, Haydee Nissen's failure to pay taxes on the Property puts

the Property at risk, *inter alia*, of being foreclosed upon by tax authorities.

Accordingly, the Court finds that an order directing the interlocutory sale of the property

is amply justified to preserve the value of the Property, and that Haydee Nissen's surviving

interest in the property cannot block the order of the Property's sale.  Under Federal Rule of

Criminal Procedure 32.2(b)(7), "at any time before entry of a final forfeiture order, the court, in

accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the

interlocutory sale of property alleged to be forfeitable."  And, pursuant to Rule G(7)(b)(i) of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, a court may

order an interlocutory sale if, *inter alia*, "the expense of keeping the property is excessive or is

disproportionate to its fair market value," "the property is subject to a mortgage or to taxes on

which the owner is in default" or for "other good cause."  Supplemental Rule G(7)(b)(i); *cf.*

S.D.N.Y. & E.D.N.Y. Adm. & Mar. R. E.4 ("Whenever property is attached or arrested . . . that

permit the marshal or other person having the warrant to execute the process without taking

---

investigative firm, established that Nissen had applied $216,000 of the fraud proceeds towards
his down payment to purchase the Property.  *See* Dkt. 71 at 10.  Nissen did not dispute this.  *Id.*

actual possession of the property, and the owner or occupant of the property is thereby permitted to remain in possession, the court, on motion of any party or on its own motion, may enter any order necessary to preserve the value of the property, its contents, and any income derived therefrom, and to prevent the destruction, removal or diminution in value of such property, contents and income.").

The Court further notes that at this time it has no need to decide the specific allocation between Haydee Nissen's interest in the Property and that of the United States, which has succeeded to Jason Nissen's interest.  The Court will adjudicate the respective interests in the Property and determine the proper allocation of these proceeds only following the sale of the property.  *See United States v. Peterson*, 820 F. Supp. 2d 576, 582 (S.D.N.Y. 2011) ("This proceeding does not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property."), *aff'd sub nom. United States v. Crew*, 537 F. App'x 3 (2d Cir. 2013) (summary order).  As the Government points out, if the proceeds of the sale of the Property do not exceed the sum total of the valid claims of parties with superior interests, the allocation of the Nissens' former shared interest, as between Haydee Nissen and the United States, may prove academic.

At the same time, the Court finds wisdom in petitioners' proposal to delay the actual sale of the property until June, out of solicitude for the circumstances for occupants Haydee Nissen and her children—who have not been adjudged culpable in Nissen's frauds—during this peak phase of the COVID-19 pandemic.  The Court, in an exercise of equity, will therefore order that the sale be deferred until June 15, 2021.  Once a sale has occurred, Haydee Nissen will have an opportunity to be heard as to any interest she retains in the Property and the priority properly accorded that interest.  To guard against further diminution of the Property's value between

today and June, the Court directs Haydee Nissen promptly to pay all outstanding taxes and

mortgage payments due on the Property and to secure and pay for appropriate insurance on the

Property, and, by February 19, 2021, to file a sworn declaration with the Court certifying that

such has been done.  Should these steps not be taken, the Court, on an application, may find good

cause to accelerate the Property's sale date.

In so holding, the Court finds unpersuasive the various arguments that Haydee Nissen

makes as to why a sale is improper or unwarranted.

She first makes arguments directed at the viability of the forfeiture of Nissen's stake in

the Property.  To this end, she argues that she was a co-owner with Nissen of that stake, a "tenant

by the entireties," and an "innocent owner" within the meaning of 18 U.S.C. § 983(d).  Dkt. 121

("Haydee Response") at 2.  The forfeitability of the Property as a substitute asset, however, was

adjudicated long ago, on consent by Nissen, and without objection by Haydee Nissen.  And

Haydee Nissen does not cite any legal authority as to why Nissen's interest in the property would

not be eligible for criminal forfeiture as a substitute asset.  The forfeiture of Jason Nissen's

interest in the property would not deprive Haydee Nissen of her share of the interest in the

Property that the Nissens earlier jointly owned.  In any event, the issue before the Court on the

application by petitioners—whose interest in the Property is superior to the interest that was once

held by the Nissens and today is held by the United Government and Haydee Nissen—is distinct.

It is whether the owners' collective interest in the preservation of the value of the Property

warrants a sale, as a result of the risks of depreciation, loss, or foreclosure by tax authorities

posed by Haydee Nissen's failure to attend to her obligations with respect to the Property.  To

the extent that Haydee Nissen seeks to litigate, or re-litigate, her remaining rights with respect to

the Property vis-à-vis the United States, the Court will take that up following the sale, on

applications as to the allocation of sale proceeds, if any net proceeds exist after the claims of entities with superior priority are satisfied.

Haydee Nissen next argues that the Property's sale would not result in any "victims" receiving funds. Haydee Response at 2. That is irrelevant. The Government is legally entitled, under the consent Forfeiture Order, to forfeiture of $71,678,669.90, reflecting the proceeds of Nissen's offense, and, with those proceeds largely untraceable, to Nissen's stake in the Property as a substitute asset. Haydee Nissen's claim is also not necessarily correct, because the Government may well choose, depending on the sum yielded by the sale of the Property, to apply proceeds forfeited to it towards restitution. In all events, petitioners, whether or not victims of the fraud scheme, had, as mortgagees, superior rights vis-à-vis the Nissens to the Property under the relevant agreements.

Haydee Nissen next argues that the Court, as a matter of comity, should refrain from ordering the Property's sale, and leave claimants to pursue state remedies such as foreclosure. *See id.* The Court, however, has unquestioned legal authority, ancillary to the federal criminal case against Nissen, over this forfeiture action, *see* 21 U.S.C. § 853(n). And the sale of the Property so as to permit the forfeiture of Nissen's stake in the Property advances important ends that counsel strongly against comity.

Finally, Haydee Nissen argues that the Government did not give adequate publication notice of the forfeiture of the property as a substitute asset. Haydee Response at 2. That is wrong. The notice was properly published on March 19, 2020. *See* Dkt. 122.

## CONCLUSION

For the foregoing reasons, the Court orders the interlocutory sale of the Property, but delays execution of the sale order until June 15, 2021. Until the execution of the sale, Haydee

Nissen is ordered to pay outstanding and ongoing mortgage payments on the Property, pay the outstanding taxes due on the Property (including 2020 property taxes) so to eliminate any liens or tax sale certificates on the Property, and to maintain insurance on the Property.  Dkt. 123 at 4. The Court directs Haydee Nissen to file a declaration by February 19, 2021, attesting that these steps have been taken.  The Court retains jurisdiction and discretion to defer the sale date further if conditions at the time so justify, or to expedite the sale date if the steps ordered herein (*e.g.*, payment of taxes due) have not been taken.

Finally, the Court directs the Government—after consulting with counsel for petitioners, Nissen, and Haydee Nissen—to submit a draft order effecting the foregoing ordered relief.  This draft order is due January 26, 2021.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 19, 2021
New York, New York

11