DHC
DAVIDOFF HUTCHER & CITRON LLP

DAVIDOFF HUTCHER & CITRON LLP

ATTORNEYS AT LAW

605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

GARDEN CITY
ATTORNEYS AT LAW
200 GARDEN CITY PLAZA
GARDEN CITY, NY 11530
(516) 248-6400

ALBANY
GOVERNMENT RELATIONS
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
GOVERNMENT RELATIONS
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

**WRITER'S DIRECT: (646) 428-3212**
**E-MAIL: dhw@dhclegal.com**

March 16, 2021

**<u>VIA ECF</u>**
Hon. Paul A. Engelmayer
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

**Re: *United States v. Jason Nissen*, No. 17-Cr-477 (PAE)**
**<u>Letter Motion for Stay Pending Appeal</u>**

Dear Judge Engelmayer:

Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A) and Federal Rule of Criminal Procedure 32.2(d), Haydee Nissen submits this letter motion in support of her motion for a stay pending appeal of the Court's Order dated February 8, 2021, authorizing a sale of her home.

## <u>BACKGROUND</u>

Haydee is the wife of defendant, Jason Nissen, and she is a third-party petitioner in these forfeiture proceedings. Haydee and Jason have owned, as tenants by the entireties, real property and a house located at 82 Woodhollow Road, Roslyn Heights, NY 11557 (the "<u>Property</u>"), the subject of this forfeiture proceeding.

Entrepreneur Growth Capital, LLC ("<u>EGC</u>") provides working capital to small and mid-sized businesses and Dean Landis is the founder and principal of the company. Upon information and belief, Mr. Landis, through EGC and/or an affiliate, provided one or more legitimate loans to Jason's ticket broker business, which is now in chapter 7 bankruptcy proceedings.

Upon information and belief, after Jason and Haydee signed a Contract of Sale to purchase the Property, they were unable to obtain a mortgage from a traditional financial institution and, as a result, were at risk of losing their down payment. Upon information and belief, Mr. Landis agreed to provide the Nissens with a bridge loan of $1,900,000 so they could purchase the Property.

Upon information and belief, Mr. Landis disguised his bridge loan to the Nissens as a credit facility to Jason's company, National Events of America Inc. ("NEA") a Chapter 7 debtor, whereby the Nissens would pledge the Property as collateral. Landis disguised his bridge loan to the Nissens as a credit facility to Jason's company, National Events of America Inc. ("NEA") a Chapter 7 debtor, whereby the Nissens would pledge the Property as collateral. Haydee had no involvement in the structure of this transaction, she was simply told to sign certain papers for the bridge loan. Declaration of Haydee Nissen Dated March 16, 2021 (the "Haydee Dec."), ¶ 5.

On November 27, 2020, EGC and another one of Mr. Landis' companies, Credit Cash NJ, LLC, filed a letter motion with the Court seeking an order authorizing the interlocutory sale of the Property (the "Sale Motion"), so they could receive the proceeds as holders of mortgages on the Property.[1] Doc. 117. On January 19, 2021, the Court entered a Decision and Order for interlocutory sale of the Property (the "Decision"). Doc 128. On February 8, 2021, the Court entered an Order of interlocutory sale of the Property (the "Sale Order"). Doc. 134. On February 23, 2021, Haydee filed a Notice of Appeal from the Sale Order (2d Cir., Case No. 21-462, the "Appeal"). Doc. 140.

Also, on February 23, 2021, the Court solicited the Government's views on whether and to what extent the appeal divested the Court of authority with respect to the Sale Order. Doc. 141. On March 8, 2021, the Government filed a letter in response, Doc. 142, asserting that the appeal had no

[1] Credit Cash asserted a second mortgage, behind EGC, based on a one-million-dollar loan to NEA.

practical effect on the Sale Order because it was interlocutory. Counsel for Haydee requested an opportunity to respond and further requested, if the Court, did not determine the appeal automatically stayed the Sale Order, the opportunity to first seek a stay from this Court during the pendency of the appeal. The Court directed Haydee to file her request for a stay pending appeal by March 16, 2021 and to also file a certification of her attempts to comply with the Court's prior order, which instructed Haydee to keep the Property insured, and to pay the outstanding real estate taxes and mortgage payments.

Haydee previously filed with the Court proof of insurance for the Property, and she also advised the Court that she would start to escrow with counsel approximately five thousand ($5,000) dollars a month for payment of the real estate taxes.[2] *See* Declaration of Haydee Nissen dated February 19, 2021, ¶¶ 2-3.

Haydee is also applying for a one-year hardship extension for the outstanding taxes that now are a tax lien on the Property. Haydee Dec., ¶ 4. Upon information and belief, even without this hardship extension, no action to foreclose on the outstanding tax lien can be conducted until sometime in January of 2022, due to a statutory two-year right of redemption to pay off any tax lien. Haydee Dec., ¶ 4.

Haydee lives at the Property with her two daughters, Elisabeth and Juliette. Jason is still incarnated. Elisabeth is 4 ½ years-old and has a special learning disability; she is "on the spectrum." Declaration of Haydee Nissen dated February 20, 2020, ¶ 30. Doc. 97-1. Juliette is an 18-month-old baby. *Id.*

[2] Haydee sent her counsel $4,000 in February and $6,000 in March and these funds are being held for payment of the real estate taxes on the Property, except that $505 was used for the fee for filing the notice of appeal. Haydee intends to replenish the funds for the appeal fee by the end of this month or in April, at the latest.

Since 2010, Haydee has been employed by Victoria Secret, a division of L Brands, Inc. Currently, she is the Director of Operations and earns $140,500 a year, excluding any bonus. *Id.*, ¶ 31. Since Jason's arrest, Haydee has been the primary source of income for her family. *Id.*, ¶ 32. She pays for the expenses for the Property and to feed and clothe her children, with little help from others. *Id*., ¶ 33. Haydee has no significant savings other than a relatively modest amount in her retirement account. *Id*., ¶ 33. Basically, she lives from paycheck to paycheck. *Id*. She has no funds to relocate her family. *Id*.

## ARGUMENT

## POINT I

## THE NOTICE OF APPEAL DIVESTS THIS COURT OF JURISDICTION

The filing of the Notice of Appeal divests this Court of jurisdiction with respect to the Sale Order. The "filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam).

As stated by the Second Circuit, there is a general rule and certain exceptions:

> The rule is that if an appeal is taken from a judgment determining the entire action, the district court's hands are tied, except to aid the appeal under Fed. R. App. P. 7 and 8, and to correct clerical errors under Fed. R. Civ. P. 60(a). An exception exists from an order granting or denying a preliminary injunction, which does not prevent the district court from proceeding on the merits. Another exception to total divestiture of district court jurisdiction occurs when the judgment appealed from does not determine the entire action, in which case the district court may proceed with those matters not involved in the appeal.

*New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989).

With respect to the Sale Order, there should be no exception to the general rule. As far as Haydee is concerned, the Sale Order will determine the entire action because it requires Haydee and her children to vacate the Property by June 15, 2021. The Sale Order also will determine the method and manner of the of the sale process. After the Property is sold, all that will remain is for the sale proceeds to be disbursed. And by then, Haydee and her children will have suffered irreparable harm.

If the Sale Order is reversed on appeal, the supplemental proceedings to determine who should receive the sale proceeds would be rendered moot. Accordingly, there is no exception to divestiture of the Court's jurisdiction over the Sale Order that should apply in this case. *See United States v. Afriyie*, 16-CR-377 (PAE), 2017 WL 6375781, at *3 (S.D.N.Y. Dec. 11, 2017) (holding that the District Court was divested of jurisdiction over the forfeiture proceedings because the forfeiture order was properly before the Court of Appeals); *United States v. Connelly*, 3:16-CR-125 (MPS), 2019 WL 5966445, at *2 (D. Conn. May 7, 2019) (holding that the notice of appeal divested the lower court of jurisdiction to consider a criminal defendant's challenges to a forfeiture order).

Therefore, the Court should determine that there already is a stay pending appeal.

**POINT II**

**TO THE EXTENT THIS COURT RETAINS JURISDICTION OVER THE SALE ORDER, A STAY OF THESE PROCEEDINGS PENDING APPEAL IS WARRANTED**

If this Court determines that it retains jurisdiction over the Sale Order, then a stay of these proceedings is warranted because, otherwise, Haydee and her children will be substantially and irreparably injured. They will be displaced from their home, during the Covid-19 pandemic, with Juliette's autoimmune system not yet fully developed and no money to move. On the other hand, neither EGC nor the Government can claim any real prejudice from a stay pending an appeal, nor would such a stay negatively impact the public.

The decision whether to stay a proceeding pending an appeal requires consideration of three factors: (1) the likelihood of success on appeal; (2) whether irreparable injury will be sustained absent a stay; and (3) whether a stay will injure the non-appellant or the public. *In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007); *Thapa*, 460 F.3d 323, 334–35 (2d Cir. 2006); *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002). These interrelated factors are assessed on a sliding scale, and "more of one excuses less of the other." *Mohammed*, 309 F.3d at 101 (internal quotation marks omitted). Thus, "the necessary level or degree of possibility of success will vary according to the court's assessment" of the other factors. *Thapa*, 460 F.3d at 334 (internal quotation marks omitted). Only "some possibility" of success on appeal is sufficient to justify a stay where "the balance of hardships tips decidedly in favor" of the party seeking the stay. *Id.* at 336. The application of these factors to this case supports the stay of these proceedings pending appeal.

**A. Haydee is likely to succeed on appeal, and the balance of hardships overwhelmingly favors the Appellant**

While there may be disagreement with Haydee's likelihood of success on appeal – Haydee believes she will be successful and, presumably, the appellee as well as the Court will disagree – there should be no issue that the other relevant factors, especially the balance of hardships, overwhelmingly favors granting the appellant a stay pending appeal.

The Second Circuit avoided "setting too high a standard" for the "likelihood of success" factor because "the trial judge is being asked to assess the likelihood that the ruling just made will be rejected on appeal." *Mohammed*, 309 F.3d at 101. Accordingly, the Second Circuit stated that the necessary "level" or "degree" of possibility of success will vary according to the court's assessment of the other factors:

> Applying this test, that Circuit has granted a stay pending appeal where the likelihood of success is not high but the balance of

> hardships favors the applicant, id., and has stated that a stay may be granted where the probability of success is "high" and "some injury" has been shown, *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C.Cir.1985). As the Sixth Circuit has explained, "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay. Simply stated, more of one excuses less of the other." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.1991) (citation omitted); *see also Ofosu v. McElroy*, 98 F.3d 694, 703 (2d Cir.1996) (four stay factors "weigh[ed]").

*Id.* Thus, even if the Court determines that Appellant is not substantially probable to prevail on appeal, the Court should still grant the stay because Haydee and her children will suffer irreparable injury.

**1. Haydee and her children will suffer significant and irreparable injury absent a stay**

Haydee has a full-time job while she takes care of her two children, a toddler and a baby, with her husband incarcerated in federal prison. She lives from paycheck to paycheck. Being dispossessed from her home in the middle of the Covid-19 pandemic, is an unfathomable, horrendous scenario for Haydee and her children.

Telling Haydee that she can move and rent some other place to live also ignores the unique nature of a person's home. *See In re Sabine Oil & Gas Corp.*, 551 B.R. 132, n. 37 (Bankr. S.D.N.Y. 2016) (quoting *Pelfresne v. Williams Bay*, 865 F.2d 877, 883 (7th Cir.1989) (holding that "[a]s a general rule, interference with the enjoyment or possession of land is considered 'irreparable' since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute.").

It simply cannot be questioned that Haydee will suffer devastating, irreparable injury if she is forced to vacate her home by June 15, 2021, and then the Sale Order were to be reversed on appeal.[3]

**2. Haydee is substantially likely to prevail on appeal.**

Haydee is substantially likely to prevail on appeal, and even if the Court finds that she is not, a stay should be granted where the balance of hardships favors the Appellant. *Mohammed*, 309 F.3d at 101. Haydee is likely to prevail on appeal because the Decision sets forth a series of questionable propositions, which will be reversed on appeal.

The Decision states that "the forfeitability of the Property as a substitute asset, however, was adjudicated long ago, on consent by Nissen, and without objection by Haydee Nissen." Doc. 128 at 9. This statement is not supported by the record.[4]

The Decision states that "Haydee Nissen does not cite any legal authority as to why Nissen's interest in the property would not be eligible for criminal forfeiture as a substitute asset." To the

---

[3] Execution of the Sale Order prior to final adjudication of the Appeal may render the Appeal moot, as a practical matter. Loss of appellate rights is a "quintessential form of prejudice." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 348 (S.D.N.Y. 2007) (holding that "where the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied."). "Consequently, in evaluating the irreparable harm element, it is necessary to analyze the risk that an appeal would be mooted in the absence of a stay. The Second Circuit has held that 'when, during the pendency of an appeal, events occur that would prevent the appellate court from fashioning effective relief, the appeal should be dismissed as moot.'" *Id.* at 348 (internal citations omitted).

[4] The first document entered by the Court identifying the Property as a substitute asset subject to forfeiture was the Preliminary Order of Forfeiture as to Substitute Asset (the "Preliminary Forfeiture Order"). Doc. 92. On September 6, 2019, the Court entered a stipulation and order consenting to entry of a preliminary order of forfeiture, providing in pertinent part:

> WHEREAS, the defendant consents to the entry of a money judgment in the amount of 71,678,669.90 in United States currency, representing property constituting or derived, directly or indirectly, from proceeds traceable to the commission of the offense alleged in Count One of the Information that the defendant personally obtained;

Doc. 73 (the "Stipulation"). The Stipulation was executed by the Government, Jason, and his attorney. Haydee is not a signatory, nor is there anything in the record showing she had an opportunity to object. Accordingly, Haydee is not bound by the Stipulation. Notably, after the Preliminary Forfeiture Oder was entered, and she had an opportunity to object, Haydee filed a Petition in Opposition to Substitute Asset Forfeiture on February 21, 2020. Docs. 97-98.

contrary, Haydee petition in opposition to the Preliminary Forfeiture Order sets forth clearly articulated objections to forfeiture, supported by persuasive legal authority.

Haydee's interest in the Property is not subject to forfeiture because she is an "innocent owner" under 18 U.S.C. § 983(d). *See* Doc. 97 at 2-6 (citing *United States v. One Single Family Residence WithOut Buildings Located at 15621 S.W. 209th Ave., Miami, Fla.*, 894 F.2d 1511 (11th Cir. 1990); *United States v. 35 Acres, More or Less, in Cherokee Cty., N.C.*, 940 F.2d 654 (4th Cir. 1991); *United States v. Certain Real Prop. Located at 2525 Leroy Lane, W. Bloomfield, Mich.*, 910 F.2d 343, 347 (6th Cir. 1990); *United States v. Marks*, 703 F. Supp. 623, 627 (E.D. Mich. 1988); *United States v. Real Prop. Located at 5205 Mount Howard Court Louisville, Ky.*, 755 F. Supp. 169, 173 (W.D. Ky. 1990); *United States v. 4413 Duchess Drive*, 863 F.Supp. 492 (E.D.Mich. 1994); *United States v. Property Entitled in Names of Alexander Morio Toki & Elizabeth Mila Toki*, 779 F.Supp. 1272 (D. Haw. 1991); *Christunas v. United States*, 61 F.Supp.2d 642 (E.D. Mich. 1999)).

Additionally, the Property is not subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because civil forfeiture is limited to property the defendant acquired as a result of the crime. As discussed in detail in the Joint Letter, the Defendant did not personally receive any proceeds from the crime charged in the Information. *See* Joint Letter submitted to Honorable Paul A. Engelmayer by the U.S. Attorney's Office and Defendant's Counsel on July 29, 2019 (Doc. 71, the "Joint Letter"), at 10-12.

Furthermore, as EGC and Credit Cash acknowledge, the Property was acquired with funds provided by EGC and Credit Cash and not with funds that Jason received in connection with his criminal conduct. Accordingly, the Property was not purchased with proceeds of Jason's crimes, and the Second Circuit is bound by *Honeycutt* and its progeny to reverse. *See* Doc. 97 at 6-9 (citing *Honeycutt v.United States*, 137 S. Ct. 1626 (2017); *United States v. Gjeli*, 867 F.3d 418, 428 (3d Cir.

2017); *United States v.Carlyle*, 712 Fed. Appx. 862, 864 (11th Cir. 2017); *United States v. Fiumano*, 721 Fed. Appx. 45, n. 3 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 651 (2018); *United States v. Gil-Guerrero*, 759Fed. Appx. 12, 18 (2d Cir. 2018); *see also United States v. $1,399,313.74 in U.S. Currency*, 613 F. Supp. 2d 433, 435 (S.D.N.Y. 2009) ("allowing the government to seize funds without regard to the legal viability or evidentiary strength of its civil forfeiture case, the statute would be subject to the gravest constitutional doubts under the Due Process clause of the Fifth Amendment.").[5]

Finally, the Decision does not address the fact that granting EGC's Sale Motion would result in the enforcement of a fraudulent mortgage on a predatory loan. EGC disguised its bridge loan for the purchase of the Nissen's home, as a collateralized mortgage for a business loan to NEA. Upon information and belief, Mr. Landis' structured the loan in this manner to avoid the applicable usury laws. Haydee simply signed the papers she was given. Haydee Dec., ¶ 5.

**C. <u>The balance of the equities favors a stay</u>**

Finally, a balancing of the equities here militates in favor of a stay. In balancing the equities, the Court will weigh the relative harms to the applicant and to the respondent. *Hollingsworth v. Perry*, 130 S. Ct. 705, 710 (2010). Furthermore, courts will consider "whether the harm to the applicant if a stay were denied and the order appealed from reversed would outweigh the harm to the opponent if a stay were granted and the order appealed from upheld." *United States v. Stein*, 452 F. Supp. 2d 281, 283 (S.D.N.Y. 2006).

[5] Similarly, in this case, the Government appears to have taken the same position. *See* Government's Motion, Doc. 83 (limiting forfeiture to property that defendant has "personally obtained") (emphasis added); *see also* Preliminary Forfeiture Order (referencing the Information and limiting forfeiture to property that the defendant has "personally obtained.").

Here, the Government (and any third party) will be hard-pressed to argue any real prejudice will result from a stay pending appeal. For the past year, throughout the nation, actions to foreclose and/or evict people from their homes have ground to a halt in recognition of the devastating effects the pandemic has had on people. Lenders with legitimate loans have, in many cases, decided to forebear from aggressive collection action. The one exception seems to be this case and, here, it appears that the underlying mortgage is tainted. Temporarily halting the sale process will cause little, if any, harm to the United States government, or the victims of Jason's criminal conduct, or even EGC and Credit Cash.

**D. <u>Granting a stay pending appeal is in the public interest.</u>**

The final factor considers the interests of third-parties who act in reliance on the court's ruling. *In re 473 W. End Realty Corp.*, 507 B.R. 496, 508 (Bankr. S.D.N.Y. 2014) (quoting *Beneficial Homeowner Serv. Corp. v. Moreau* (*In re Moreau*), 135 B.R. 209, 215 (N.D.N.Y.1992)). It is unclear who, if anyone, might be adversely impacted by acting in reliance on the Sale Order.[6]

However, if the Court does grant stay pending appeal, the public interest is preserved pending appeal – holders of valid and binding liens can collect once the appeal is disposed, the Government will retain discretion to provide restitution payments to victims, and the value of the Property will be preserved pursuant to Haydee's hardship application and right of redemption.

[6] If Mr. Landis or his companies claim to be third-parties who fall under the ambit of this factor, Haydee will address that in her reply.

**CONCLUSION**

For the reasons described above, the Court should determine that the pending appeal divests this Court of jurisdiction to take any further action relating to the Sale Order. Alternatively, the Court should grant Haydee and her children a stay pending appeal.

DAVIDOFF HUTCHER & CITRON LLP

Respectfully submitted,

/s/ David H. Wander
David H. Wander
Alexander R. Tiktin
605 Third Avenue
New York, NY 10158
(212) 557-7200
*Attorneys for Haydee Nissen*